Iona SELLERS and Rosetta Harvey,
Plaintiffs,

v.

**IOWA POWER AND LIGHT COMPANY,**
a public utility, et al., Defendants.

Civ. No. 73–78–1.

United States District Court,
S. D. Iowa, Central Division.

March 27, 1974.

John C. Wellman, Des Moines, Iowa, for plaintiffs.

John C. Cortesio, Jr., Michael H. Figenshaw, Mark W. Putney, and Lynn K. Vorbrich, Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, Iowa, for defendant Iowa Power & Light.

Leo J. Steffen, Jr., Asst. Commerce Counsel, and Don Charles Uthus, Commerce Counsel, Des Moines, Iowa, for defendant Iowa State Commerce Commission and commissioners.

Richard E. Haesemeyer, Des Moines, Iowa, for State of Iowa.

Before STEPHENSON, Circuit Judge, HANSON, Chief District Judge, and STUART, District Judge.

STUART, District Judge.

Plaintiffs brought this action challenging the constitutionality of Section 490A.6 Code of Iowa, prayed for damages and injunctive relief and requested a three-judge court which was duly convened and to which this case was submitted on the 1st day of November, 1973.

Iowa Power and Light Company (IPALCO) is a public utility furnishing gas and electric services to residents of a substantial portion of Iowa. It is subject to state regulation by the Iowa State Commerce Commission (Commission) under Chapter 490A, Code of Iowa. The plaintiffs are residential customers of IPALCO's gas and electric services. They are recipients of Aid to Families with Dependent Children.

On March 27, 1973 named plaintiffs filed a motion to proceed in forma pauperis individually and as representatives of the class "of all residential gas and/or electric customers". On June 6, 1973, after plaintiffs had furnished a brief Judge Stuart allowed plaintiffs to proceed in forma pauperis as individuals but not as representatives of the class specified. The Complaint was filed the same day seeking preliminary and permanent injunctions enjoining the enforcement of Section 490A.6 and prohibiting IPALCO from further collections of the rate increase until the Commission had held a hearing and determined the legality of the proposed rate increase. Plaintiffs also sought a declaratory judgment that 490A.6 is void on its face and as applied to these plaintiffs because it is unconstitutional under the Fifth and Fourteenth Amendments in that it takes property without due process of law, (i. e. without notice and hearing) and asked for a refund of the rate increases already collected.

Section 490A.6 permits public utilities requesting a rate increase, which has been suspended by the Commission, to post bond and begin collecting the proposed rate increase without a prior hearing on its reasonableness subject to being refunded at interest if later found to be excessive.[1]

The ultimate issue is whether the Due Process Clauses of the Fifth and Fourteenth Amendments require notice and hearing prior to the implementation of a proposed rate increase which is collected under bond and is refundable at interest if determined to be excessive.

### Facts

On September 1, 1972 Iowa Power and Light Company (IPALCO) filed a proposed general *gas* rate change under the provisions of Chapter 490A. By Order dated September 29, 1972, the Commission docketed the proposal as U-416, suspended the rate increase for a year and began investigating its reasonableness.

On October 6, 1972 IPALCO filed a proposed electric rate increase. The Commission combined this proposal with the gas proposal under Docket No. U-416, and permitted the increase to become effective January 2, 1973 subject to refund at 7% interest.

On December 15, 1972 the IPALCO filed "interim rates under bond" for both gas and electric service, as permitted by 490A.6, which were less than the proposed rates. The Commission approved the bond by its Order of December 29, 1972 and permitted the interim rates to become effective Janaury 2, 1973, subject to refund at 7% interest if ultimately determined to be excessive.

Neither plaintiff filed written objections to IPALCO's proposed rate increases nor requested public hearings to determine whether the increases should be allowed. On September 24, 1973 hearings to determine the reasonableness of the rate increases were commenced.

The rules, regulations and tariff provisions of the Commission contemplate

1. The pertinent part of Section 490A.6 provides:

> However, a public utility shall have the right at any time after said rates, charges, schedules or regulations have been suspended for ninety days to place in effect any or all of such suspended rates, charges, schedules or regulations by filing with the commission a bond or other undertaking approved by the commission conditioned upon the refund in a manner to be prescribed by the commission of any amounts collected thereunder in excess of the amounts which would have been collected under rates, charges, schedules, or regulations finally approved by the commission * * *

that under certain circumstances and upon the meeting of stated conditions, the company has the right to impose a delayed payment charge or to discontinue a customer's service.

The Iowa procedure is typical of that used in many other state and federal regulatory acts.[2] Plaintiffs are entitled to have their claims seriously considered and closely examined.

A three-judge court in the District of South Carolina recently considered very similar claims in Holt v. Yonce, 370 F. Supp. 374, filed October 5, 1973.[3] The court there held that requiring due process hearing prior to the collection of a temporary rate increase would extend the "Fuentes-Sniadach line of cases" to an uncharted point not supported by authority. The court concluded the case was controlled by United Gas Pipe Line Co. v. Memphis Light, Gas and Water Division (1958), 358 U.S. 103, 79 S.Ct. 194, 3 L.Ed.2d 153.

While there is much pertinent language in United Gas Co. v. Memphis Gas Div., the Court did not have before it the due process arguments now being raised. It also preceded the Fuentes-Sniadach line of cases. We believe it advisable to set forth in more detail our reasons for agreeing with the result reached by the court in Holt v. Yonce. See also: Hahn v. Gottlieb (1st Cir., 1970), 430 F.2d 1243; Brown v. Hausman (D.C.Conn.), unreported filed June 21, 1972 by Judge Newman.

## Property Interest

I. Plaintiffs basic premise upon which all of their arguments are based is that they have some property interest of which they are being unconstitutionally deprived because of a lack of opportunity to be heard prior to collection of the increase. The Supreme Court discussed the property interests protected by the Fifth and Fourteenth Amendments in Board of Regents v. Roth (1972), 408 U.S. 564, 569–572, and 576–577, 92 S.Ct. 2701, 2705–2709, 33 L.Ed. 2d 548:

> The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite.

> * * * The Court has also made clear that the property interest protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money.

> * * * The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests—property interests—may take many forms.

2. Many federal statutes contain this feature. See, e. g., Natural Gas Act, 15 U.S.C. § 717c(e); Federal Power Act, 16 U.S.C. § 824d(e); Federal Communications Act, 47 U.S.C. § 204; Interstate Commerce Act, Part I, 49 U.S.C. § 15(7); Motor Carrier Act, 49 U.S.C. §§ 316(g), 318(c); Water Carrier Act, 49 U.S.C. § 907(g), (i); Freight Forwarders Act, 49 U.S.C. § 1006(e); Federal Aviation Act, 49 U.S.C. § 1482(g). These statutes have been often construed and applied by the courts and none of them has ever been declared unconstitutional. Furthermore, many state statutes regulating utilities also allow proposed rates to be placed in effect or to go into effect prior to commission determination of their justness and reasonableness. See, e.

g., Ala.Code Ann. Tit. 48, § 54 (1971 Cum. Supp.); Ark.Stat.Ann. § 73–217 (1957); Conn.Gen.Stat. § 16–19 (Supp. III, 1969), Del.Code Ann. Tit. 26, § 153 (1953); Ga. Code Ann. § 93–307.1 (1972 Cum.Supp.); Ky.Rev.Stat.Ann. § 278.190 (1972); Md. Code Ann. Art. 78, § 70 (1969); Miss.Code Ann. § 7716–10 (1956); N.H.Rev.Stat.Ann. § 378.6 (1966); N.M.Stat.Ann. § 68–6–7 (1971 Cum.Supp.); N.C.Gen.Stat. §§ 62–134, 62–135 (1965 and 1971 Cum.Supp.); S.C. Code of Laws Ann. §§ 58–115, 58–405 (1962); Vt.Stat.Ann. Tit. 30, § 227 (1970); W.Va.Code Ann. § 24–2–4 (1971); Wyo. Stat.Ann. § 37–56 (1959).

3. Since the writing of this opinion Holt v. Yonce has been summarily affirmed by the U. S. Supreme Court, 42 L.W. 3157.

\* \* \* To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

See also: Morrissey v. Brewer (1972), 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L. Ed.2d 484.

■ Plaintiffs describe the property they claim was taken from them without procedural due process as the money required to pay the rate increases prior to the determination of their legality, thus depriving them of the use and enjoyment of the fruits of their labors or statutory grants which, but for the increases, would have been available to pay other household expenses.

We believe plaintiffs' claim of property interest is too broadly stated to be within the protection of the Fourteenth Amendment. In our opinion plaintiffs must show they have a legal entitlement to or a vested right in the rates being charged before the proposed increase, before they can claim any property rights protected by the United States Constitution.

At common law a public utility "like the seller of an unregulated commodity, has the right in the first instance to change its rates as it will, unless it has undertaken by contract not to do so". United Gas Co. v. Memphis Gas Division (1958), 358 U.S. 103, 113, 79 S.Ct. 194, 200, 3 L.Ed.2d 153; FPC v. Hunt (1964), 376 U.S. 515, 522, 84 S.Ct. 861, 11 L.Ed.2d 878; United Gas Pipe Line Co. v. Mobile Gas Service Corp. (1956), 350 U.S. 332, 343, 76 S.Ct. 373, 100 L. Ed. 373; Gas Service Co. v. FPC (1960), 108 U.S.App.D.C. 334, 282 F.2d 496, 500.

Conversely, utility customers have no vested rights in any fixed utility rates, Wright v. Central Kentucky Natural Gas Co. (1936), 297 U.S. 537, 542, 56 S.Ct. 578, 80 L.Ed. 850; Norwegian Nitrogen Products Co. v. United States (1933), 288 U.S. 294, 318, 53 S.Ct. 350, 77 L.Ed. 796; San Antonio Utilities League v. Southwestern Bell Telephone Co. (5th Cir., 1936), 86 F.2d 584, cert. den., 301 U.S. 682, 57 S.Ct. 783, 81 L.Ed. 1340; United States Light and Heat Corp. v. Niagara Falls Gas & Electric Light Co. (2nd Cir., 1931), 47 F.2d 567, 570, cert. den., 283 U.S. 864, 51 S.Ct. 656, 75 L.Ed. 1469; Lenihan v. Tri-State Telephone & Telegraph Co. (1940), 208 Minn. 172, 293 N.W. 601, cert. den., 311 U.S. 711, 61 S.Ct. 392, 85 L.Ed. 463; Wisconsin Telephone Co. v. Public Service Commission (1939), 232 Wis. 274, 287 N.W. 122, cert. den., 309 U.S. 657, 60 S.Ct. 514, 84 L.Ed. 1006.

■ As plaintiffs have no property interest in existing rates which is protected by the Fifth and Fourteenth Amendments, we hold that plaintiffs are not entitled to a procedural due process hearing prior to a determination of the lawfulness of the proposed rate increase and that the Iowa statutory provision in 490A.6 which provide for interim collection of the proposed increase under bond to be refunded if found to be excessive does not violate the Due Process Clauses of the Fifth and Fourteenth Amendments.

#### Weighing the Interests

II. Even if we assume for the purposes of this discussion that plaintiffs have property rights in existing rates protected by the Fifth and Fourteenth Amendments, we must then weigh the countervailing interests of these parties and the public. Morrissey v. Brewer (1972), 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484; Stanley v. Illinois (1972), 405 U.S. 645, 652, 92 S.Ct. 1208,

31 L.Ed.2d 551; Bell v. Burson (1971), 402 U.S. 535, 541, 91 S.Ct. 1586, 29 L. Ed.2d 90; Goldberg v. Kelly (1970), 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287.

"Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." Morrissey v. Brewer, supra.

From the plaintiffs' standpoint, the collection of the increased rates during the interim before the legality is determined deprives them of the present use of the money necessary to pay the increased rate. If plaintiffs failed to pay the utility bill on time the cost would be increased. Continued failure to pay might under proper procedure result in the termination of services. The bond guarantees refund of illegally collected monies at a reasonable interest. While the deferred use of funds is no small matter to those operating on a limited income, there has been no showing here, that the increased rates would deprive plaintiffs "of the very means by which to live" while they wait the outcome of the hearing listed as the "crucial factor" in Goldberg, supra, at 264, 90 S.Ct. at 1019.

The company has a right to a fair return on its investments. Prior to the enactment of Chapter 490A, public utilities founded claims for rate increases on the theory that existing rates deprived them of property without due process of law under Section 9, Article I of the Iowa Constitution. Iowa-Illinois Gas & Electric Company v. Ft. Dodge (1957), 248 Iowa 1201, 1210, 85 N.W.2d 28. Chapter 490A shifted the responsibility for a determination of a fair return from the Courts to the commission. If existing rates do not provide a fair return, the company would be deprived of its property to the extent that the rates were insufficient. There is no practical way to make the rate increase retroactive and collectable. If rate increases are prohibited until a determination of their legality, the company would be deprived of a fair return on its property during the interim. As rate hearings may go on for years, the loss could be substantial.

Plaintiffs argue no government interest has been shown which might override the necessity for a prior hearing. The government has an interest in protecting the consuming public, but it also has an interest in seeing that a public utility receives a fair return in order that it will be able to make necessary repairs and improvements to provide efficient and responsible services to its customers.

Chapter 490A represents a careful accommodation of the various interests involved. The suspension period was limited as to time to prevent excessive harm to the utilities, for revenues lost during that period could not be recouped from the consumers. The collection under bond after the suspension period had passed enables the utility to keep the loss at a minimum and collect funds which may be necessary for it to perform its public services properly, while at the same time mitigating the loss to consumers by guaranteeing the refund of the excess at reasonable interest. United States v. SCRAP (1973), 412 U. S. 669, 697, 93 S.Ct. 2405, 37 L.Ed.2d 254.

The hearings on the legality of the rate increases which are held before final approval of the rates affords these plaintiffs the "meaningful opportunity to be heard" required by Boddie v. Connecticut (1971), 401 U.S. 371, 377, 91 S. Ct. 780, 28 L.Ed.2d 113 and Fuentes v. Shevin (1972), 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556.

Weighing all the various interests in this case, and the protection afforded the consumers we conclude that, assuming plaintiffs interests were within the protection of the Fifth and Fourteenth Amendments, procedural due process under such amendments does not require notice and hearing on the legality of the

rate increases prior to their collection under bond.

Cases cited by plaintiffs requiring due process hearings before some government action do not compel, or in our opinion even suggest, the result sought by plaintiffs under these facts. They are distinguishable either (1) because the interests involved came within the protection of the Fifth and Fourteenth Amendments, or (2) the countervailing interests weighed in favor of a pre-action hearing, or both.

Sniadach v. Family Finance Corp. (1969), 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 involved the in rem seizure of wages without hearing or notice under Wisconsin garnishment proceedings pending culmination of the main suit. Wages are property and are protected by the due process clauses. In addition the Court held the exemption was insufficient to support the debtor for a week and prejudgment garnishment "could drive a wage earning family to the wall". The deprivation of use in the instant case is at most $5.00 to $6.25 per month.

In Goldberg v. Kelly (1970), 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287, the Supreme Court held welfare recipients are entitled to a due process hearing prior to termination of welfare benefits under the Fourteenth Amendment. Welfare benefits are "statutory entitlement[s] for persons qualified to receive them" and are property rights protected by the Fourteenth Amendment. As previously pointed out, deprivation of the use of these funds prior to hearing affected the "very means by which to live" while waiting on the outcome.

In Bell v. Burson (1971), 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90, the Supreme Court held a person is entitled to a due process hearing before suspension on all elements essential to a decision to suspend a driver's license. The court held that once a driver's license is issued it may become essential to the holder's livelihood and is an important interest which is within the protection of the Fourteenth Amendment. The circumstances are so different, the weighing of countervailing interests are not helpful to the determination of this case.

In Fuentes v. Shevin (1972), 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, the Supreme Court, in a four to three decision (Powell and Rehnquist, JJ. not participating), held that the Due Process Clause of the Fourteenth Amendment requires notice and hearing before the vendor may reclaim possession of personal property sold on a conditional sales contract which is in default. The vendees property interest in the goods is clear. In addition there was no important public interest served in prejudgment replevin statutes which allowed summary seizure when no more than private gain was directly at stake. Here there is a genuine govermental and public interest in the financial health of the public utility as previously stated.

Ihrke v. Northern States Power Co. (8th Cir., 1972), 459 F.2d 566 held only that termination of service by the utility company was state action and remanded the case for hearing on the merits. In Palmer v. Columbia Gas Company of Ohio (1972), 342 F.Supp. 241, the Court held that due process of law required that a utility customer be given a meaningful hearing prior to termination. We believe there is a substantial distinction between termination of service and the collection of a rate increase under bond. The meaningful hearing requirement would become important if the utility contemplated terminating service for failure to pay the increased utility bill.

We, therefore, hold that Section 490A.6 Code of Iowa does not violate either the Fifth or Fourteenth Amendments to the Constitution of the United States because:

(1) Plaintiffs have no property interest in existing rates that are protected by these amendments.

(2) The countervailing interests under all the circumstances of this case weigh

in favor of permitting collection of the increased rates under bond prior to determination of their legality.

Judgment shall be entered in accordance herewith.