GEORGIA POWER PROJECT et al., Plaintiffs,

v.

GEORGIA POWER COMPANY et al., Defendants.

Civ. A. No. C75–299A.

United States District Court,
N. D. Georgia, Atlanta Division.

Sept. 30, 1975.

Ed. Martin, Jr. and David Alan Schlissel, Atlanta, Ga., for plaintiffs.

Tench C. Coxe, James E. Joiner, William H. Boice, Troutman, Sanders, Lockerman & Ashmore, Arthur K. Bolton, Atty. Gen., Timothy J. Sweeney, Asst. Atty. Gen., Robert J. Castellani, Deputy Atty. Gen., Atlanta, Ga., for defendants.

ORDER

JAMES C. HILL, District Judge.

This action was submitted to the Court on the defendants' motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On June 14, 1975, the Court directed the parties to supplement the record and to address certain concerns raised as to this Court's jurisdiction in light of the Georgia Supreme Court decision in *Georgia Power Co. v. Allied Chemical Corp.*, 233 Ga. 558, 212 S.E.2d 628 (1975). Subsequently, the plaintiffs filed a motion for default judgment and the defendants responded with a motion to strike.

Plaintiffs Herring, Niemann, and Lahring are residential consumers of electricity of the defendant Georgia Power Company and members of Georgia Power Project. Plaintiff Georgia Power Project (the "Project") is an unincorporated association of Georgia citizens who are "concerned with the practices and policies of the Georgia Power Company and the effects of the practices and policies of that company on the public health, safety, and welfare." Plaintiffs Webb and Reynolds are residential consumers of electricity of Georgia Power Company. Defendants Wiggins, Kimbrough, Spinks, Barber and Pafford constitute the membership of the Georgia Public Service Commission (the "Commission"). Defendant Georgia Power Company ("Georgia Power") is a utility corporation providing electricity throughout a vast majority of the State of Georgia. The plaintiffs seek declaratory, injunctive and monetary relief from an order of the Commission alleged to be in violation of the Fifth and Fourteenth Amendments to the Constitution and a declaration that Ga.Code Ann. § 93–310 is unconstitutional.

On November 12, 1974, Georgia Power filed an application with the Commission for an emergency rate increase of $86,000,000 between December 17, 1974, and April 30, 1975, and rate schedules implementing the same. On this same date Georgia Power filed testimony and exhibits in support of its application. The application was assigned docket no. 2657–U and set for hearing on December 16, 1974. On December 16, 1974, at the request of the Commission's staff, the hearings were adjourned until January 20, 1975.

On December 17, 1974, Georgia Power filed a motion asking

a) that the Commission reconsider its action in postponing the emergency hearing and requesting that it reinstate the hearing schedule, or

b) that it accelerate the hearing date to January 10, 1975, and, in the interim, permit the emergency rates to go into effect fully, subject to refund, or

c) that it accelerate the hearing date to January 10, 1975, and permit recovery of the almost $45,000,000 in 1974 unrecovered fuel costs. The Commission met in executive session on that same date and denied a) and b) above. As to c), the acceleration of the hearing date was denied, but a hearing was set for December 19, 1974, for the purpose of hearing evidence concerning the alleged unrecovered fuel costs.

On December 19 and 20, 1974, the Commission held hearings on the motion of Georgia Power. On December 23, 1974, the Commission approved an increase on an emergency basis in the form of a surcharge not to exceed $35,-000,000 to commence January 23, 1975. The surcharge applied to all retail sales during the period, except residential users using 350 kilowatt hours or less per month.

The plaintiffs alleged in their original complaint that this order of the Commission was made without adequate or reasonable notice or hearing; that the order relied upon evidence and testimony not submitted ten (10) days in advance, in violation of the Commission's General Rule 15;[1] that the order was made without reasonable notice of a new rate schedule having been filed, in violation of Ga.Code Ann. § 93–307.1;[2] and that

1. General Rule 15 provides in pertinent part:

All applications, petitions and complaints made to the Georgia Public Service Commission must plainly and distinctly state the grounds thereof, all being set forth in writing. In like manner, all defenses must be distinctly made in writing, and must plainly and distinctly state the grounds thereof. These specifications may be accompanied, if the parties so desire, by any explanation or argument, or by any suggestion, touching the proper remedy or policy. The parties may also be heard in person, or by attorney or by written argument, upon such written statements being first filed.

On all applications, petitions and complaints, and when the Commission initiates action, notice shall be given to the persons or corporations interested in, or affected thereby, ten days before the hearing except in cases for the fixing of joint rates, when thirty days' notice shall be given and shall give to such persons or companies an opportunity to be heard.
* * *

Upon the hearing of all cases that may come on to be heard before the Commission, the respective parties may present their testimony, either written or oral, or by affidavits. Copies of all affidavits intended to be offered by either party shall be served upon the opposite party, his counsel or agent having control of the case, if known, and if unknown with the Commission, at least five days, and all counter affidavits at least three days, before the date set for their hearing. All telephone, electric and power companies, all transit companies and all natural gas companies, all railroads and all motor carriers must file with the Commission ten days prior to the assigned date of hearing ten copies of all exhibits and written testimony to be introduced at the hearing as evidence in rate and security issue cases.

If any party of record in a matter decided by the Commission in a formal proceeding be dissatisfied with the order or decision of Commission, application shall be made within ten days from notice thereof by written petition, to the Commission for rehearing, reconsideration and oral argument, alleging with particularity the matters claimed to have been erroneously decided and the alleged errors and the relief sought, together with a certificate that a copy of such petition has been furnished all parties of record. If, in the opinion of the Commission, good cause has been alleged in said petition for rehearing, reconsideration and oral argument the Commission shall, within thirty days, either assign such petition for hearing or conference, or reopen the original hearing for introduction of additional evidence and give all parties of record ten days' notice thereof. Such petition shall serve as a supersedeas, and pending final order of disposition thereof, the original order shall be stayed.

This rule of procedure and of evidence, except as to notice of hearing above provided, may in any, and all instances be varied or relaxed when in the exercise of a sound discretion this Commission shall be of the opinion that a departure from the letter thereof may be necessary to the attainment of substantial justice; due care being taken in every instance to guard against any injurious surprises.

2. Ga.Code Ann. § 93–307.1 reads:

(a) No change shall be made by any person, firm, or corporation (hereinafter referred to as "utility") subject to the jurisdiction of the Public Service Commission in any rate, charge, classification or service subject to the jurisdic-

the plaintiffs were denied due process of law in the promulgation of the order, in violation of the Fourteenth Amendment. Plaintiffs further contend that the rates established by the order deprive them of life, liberty, and property without due process of law and that the rates are unjust and unreasonable. Finally, plaintiffs alleged that Ga.Code Ann. § 93–310[3] establishes an irrebuttable presumption of justness and reasonableness without an opportunity for them to challenge the determination so as to deprive them of due process.[4]

tion of the commission, or in any rule or regulation relating thereto, except after 30 days' notice to the commission and to the public, unless the commission otherwise orders, or unless the commission has previously authorized or approved the same. Such notice shall be given by filing with the commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect. The commission, for good cause shown, may allow changes to take effect without requiring the 30 days' notice herein provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published.

(b) Whenever any such new schedule is filed, the commission shall have authority, either upon written complaint or upon its own initiative without complaint, at once, and, if it so orders, without answer or formal pleading by the utility but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, charge, classification, or service; and, pending such hearing and the decision thereon, the commission, upon filing with such schedules and delivering to the utility affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the time when it would otherwise go into effect; and after such hearings as are required, either completed before or after the rate, charge, classification, or service goes into effect, the commission may make such orders as are proper with reference thereto within the authority vested in the commission. The commission is empowered to reduce or revoke any such suspension with respect to all or any part of such schedule. If the proceeding has not been concluded and an order made at the expiration of the suspension period, the proposed change of rate, charge, classification, or service shall go into effect at the end of such period, but in case of a proposed increased rate or charge, the commission shall by order require the interested utility to keep accurate account in detail of all amounts received by reason of such increase, specifying by whom and in whose behalf such amounts were paid, and upon completion of the hearing and decision shall by further order require such utility to refund, with interest at the max-

imum legal rate, in such manner as the commission may direct, such portion of such increased rates or charges as by its decision shall be found not justified. Any portion of such refunds not thus refunded to patrons or customers of the utility shall be refunded or disposed of by the utility as the commission may direct: Provided, however, no such funds shall accrue to the benefit of the utility. At any hearing involving a rate or charge sought to be increased, the burden of proof to show that the increased rate or charge is just and reasonable shall be upon the utility, and the commission shall give to the hearing and decision of such questions preference over other questions pending before it and decide the same as speedily as possible.

(c) Before any increased rate or charge shall go into effect without the approval of the commission, the commission shall by order, require the interested utility to file a bond with the commission written by a surety approved by the commission and authorized to transact business in this State. The bond shall be fixed by the commission in an amount not to exceed $250,000. The bond shall be payable to the Governor and conditioned upon the faithful performance of the requirements of the refund order entered by the commission, this Code section, and the rules and regulations of the commission.

(Acts 1972, p. 137)

**3.** Ga.Code Ann. § 93–310 provides:

The Public Service Commission is required to make for each of the railroad corporations doing business in this State a schedule of just and reasonable rates of charges for transportation of passengers and freights and cars on each of said railroads; and said schedule shall, in suits brought against any such corporation, wherein is involved the charges of any such corporation for the transportation of any passenger or freight or cars or unjust discrimination in relation thereto, be deemed and taken in all the courts as sufficient evidence that the rates therein fixed are just and reasonable rates or charges for the transportation of passengers and freights and cars upon the railroads; and said Commission shall, from time to time and as often as the circumstances may require, change and revise such schedules.

**4.** Section 1 of the Fourteenth Amendment provides in part:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall

On February 13, 1975, defendant Georgia Power submitted the instant motion to dismiss for failure to state a claim upon which relief could be granted. On February 24, 1975, plaintiffs filed their "Amended Complaint." In addition to the allegations made in the original complaint, the plaintiffs submit that the Commission held further hearings in docket no. 2657–U the week of January 20–24, 1975, and that on February 3, 1975, additional substantive evidence was presented by Georgia Power to the Commission without copies being served on plaintiffs and after the record had been closed, in violation of General Rule 15. Furthermore, plaintiffs assert that the Commission held *ex parte* meetings and conversations with officers and agents of Georgia Power, prior to issuance of a final order on February 6, 1975, which order affirmed the previous order of December 23, 1974, and allowed an additional $25,000,000 in rate increases. Plaintiffs also assert that in the promulgation of this latter order that they were denied due process; that the rates allow reimbursement to Georgia Power of $2,000,000 of expenses incurred as a result of acts and practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* which amounts to ratification of unconstitutional discrimination in violation of the due process and equal protection clauses of the Fourteenth Amendment; and, that the order deprives plaintiffs of their rights under the Public Holding Company Act of 1935, 15 U.S.C. § 79 *et seq.*

On March 4, 1975, defendants Wiggins, Kimbrough, Spinks, Barber and Pafford filed their motion to dismiss for failure to state a claim upon which relief can be granted.

The complaint in this case was filed on February 7, 1975, and served on defendant Georgia Power on February 12, 1975. On February 13, 1975, Georgia Power moved to dismiss the complaint under Rule 12(b)(6) and on February 24, 1975, plaintiffs filed a brief in opposition to

any State deprive any person of life, liberty, or property, without due process of law; nor

the motion to dismiss and a pleading styled "Amended Complaint." The "Amended Complaint" realleges the matters in the original complaint, incorporates by reference the exhibits attached to the original complaint, and alleges additional facts as to events occurring after the events covered by the original complaint in support of additional relief. The "Amended Complaint" alleges some additional violations of law alleged to have resulted from the promulgation of a separate order of the Commission.

Plaintiffs move for default judgment against all defendants for failing to respond to the "Amended Complaint," and Georgia Power moves to strike the "Amended Complaint" because it is in reality a supplemental pleading which requires leave of Court to be filed and no such permission was granted.

■ A default judgment may be obtained by application to the Court upon the failure of any party to plead or otherwise defend as provided by the Federal Rules of Civil Procedure. Rule 55, F.R.C.P. A party may amend his pleading once as a matter of course any time before a responsive pleading is served; otherwise, a party may amend his pleading only by leave of court or by written consent of the adverse party, and leave shall be freely given when justice so requires. Rule 15, F.R.C.P. Upon motion of a party, the Court may upon such terms as are just permit a party to serve supplemental pleadings setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.

■ Whether the additional pleading in this case is an "Amended Complaint" or a supplemental pleading in the technical sense, the Federal Rules are to be interpreted liberally so as to reach the merits of a controversy. The grant or denial of a motion for entry of a default judgment lies within the sound discretion of the trial court. *Duling v. Markun*, 231 F.2d 833 (7th Cir. 1956), *cert.*

deny to any person within its jurisdiction the equal protection of the laws."

*den.* 352 U.S. 870, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956). The plaintiffs have not shown, nor do they even allege, any prejudice as a result of the defendants allegedly improper failure to respond to their "Amended Complaint." Consequently, the motion for entry of default judgment is denied.

■ Nor can the defendants show any prejudice as a result of plaintiffs' alleged failure to obtain leave of court in order to file their "supplemental pleadings." The motion to dismiss submitted by the defendants was treated by all parties as properly in issue in this case. The motion to dismiss was responsive to the original as well as the amended complaint. The motion to strike is therefore denied.

In the Court's order of June 14, 1975, concern was expressed as to whether or not one or all of the plaintiffs are barred from bringing this action as a result of the Georgia Supreme Court decision in *Georgia Power Co. v. Allied Chemical Corp.*, 233 Ga. 558, 212 S.E.2d 628 (1975). In this recent case corporate users of electrical power and the Georgia Power Project sought an injunction against orders of the Commission on the grounds that the rate structure was unreasonable and that the rate level was unreasonably high. The issue as framed by the Georgia Supreme Court was

> "whether consumers of electricity supplied by a public utility have standing to seek to enjoin the enforcement and collection of rates set by an order of the Georgia Public Service Commission on the ground that the level of these rates is *unreasonably high.* We answer this question 'No.'" 233 Ga. at 558, 212 S.E.2d at 630.

This Court sought argument as to the collateral estoppel or res judicata effect this decision had on the present action.

As might have been anticipated—and in the true spirit of adversary proceedings—the defendants argue that the state court decision bars the present suit while the plaintiffs submit that it has no effect whatsoever. The Court is of the opinion that this suit is barred by neither of these doctrines.

■■ For one thing the Commission orders at issue in the *Allied Chemical* case are not the same orders as the ones contested in this suit. A prior judgment is res judicata only as to suits involving the same cause of action. *Lawler v. National Screen Service Corp.*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). The evidence which would have supported a judgment on the merits in *Allied Chemical* would not support a judgment in this case. *Astron Industrial Association, Inc. v. Chrysler Motor Corp.*, 405 F.2d 958 (5th Cir. 1968). Thus, this action is not barred by the doctrine of res judicata.

■ Collateral estoppel precludes relitigation in a second or subsequent suit issues actually determined in a prior suit. *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451 (5th Cir. 1971). As there stated,

> "[t]he traditional threshold requirements for application of the doctrine of collateral estoppel are that (1) the issue to be concluded must be identical to that involved in the prior action; (2) in the prior action the issue must have been 'actually litigated'; and (3) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment. If any one of these requirements is lacking, there is no collateral estoppel." (citations omitted). 444 F.2d at 458–459.

In short, however identical the issues may be, the fact is that no issues were "actually litigated."

> "The distinguishing feature of the doctrine of collateral estoppel is that it precludes in a second or subsequent suit the relitigation of fact issues actually determined in a prior suit *regardless of whether the prior determination was based on the same cause of action* in the second suit. . . .
>
> . . . As a general rule, where a question of fact is put in issue by the pleadings, and is submitted to the jury or other trier of facts for its determi-

nation, and is determined, that question of fact has been 'actually litigated.'"

444 F.2d at 459–460.

The state court suit was decided on a motion to dismiss under Georgia civil procedure rules. The legal question raised and decided was the "standing" of the plaintiffs in state court. Also, in the case *sub judice* two of the plaintiffs herein were not parties to and in no way involved in the earlier state suit. Thus, the doctrine of collateral estoppel is inapplicable.

■ Plaintiffs-consumers of electricity complain in this case that the orders of the Commission allowing rate increases to Georgia Power both substantively and procedurally violate their due process rights guaranteed by the Fourteenth Amendment to the United States Constitution. That amendment provides that no person shall be deprived of "life, liberty, or property without due process of law." The issues dispositive of this matter are whether the plaintiffs have a "property" interest protected by the Constitution in the rates that they pay for electricity; and if so, whether the orders allowing the increases here at issue were promulgated in violation of the process to which plaintiffs are "due." The Court is of the opinion that plaintiffs have no property interest so protected. Therefore, the Court finds it unnecessary to reach the second issue as to whether the plaintiffs, in fact, received due process in these proceedings. Consequently, the defendants' motions to dismiss are hereby granted.

For any discussion of procedural due process rights, one must begin with the analysis in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Mr. Justice Stewart wrote:

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite.

. . . [T]o determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the *nature* of the interest at stake." (footnotes omitted)

408 U.S. at 569–571, 92 S.Ct. at 2705, 2706, 33 L.Ed.2d at 556, 557.

The interest sought to be protected here is alleged to fall within the parameters of "property."

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. . . .

.  .  .  .  .

. . . To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims."

408 U.S. at 576–577, 92 S.Ct. at 2708, 2709, 33 L.Ed.2d at 560–561.

Using the guidance offered by this opinion, the question becomes whether the plaintiffs herein have a sufficient "property" interest—"a legitimate claim of entitlement"—in electrical rates so as to invoke the protection of the due process clause of the Constitution.

"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law— rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561.

Thus, welfare recipients have a claim of entitlement to welfare payments that is grounded in the statute defining eligibility. *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). In the area of public employment, a college professor's claim of entitlement to his office may be grounded in tenure provisions, *Slochower v. Board of Education*, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1955), a college staff member's in the terms of his contract, *Wieman v. Updegraff*, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952) and a teacher's merely in a clearly implied promise to continued employment. *Connell v. Higginbotham*, 403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971). Similarly, a sufficient property interest or claim may be created by the promulgation of internal rules of procedure and practice of a given organization. *Cf. Goldsmith v. Board of Tax Appeals*, 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494 (1926) (dictum). The Court must therefore decide whether plaintiff's claim to electrical rates at one level as opposed to another level is "property" for purposes of the Fourteenth Amendment.

Any claim to "property" rights which the plaintiffs herein may have would seem necessarily to be created and their dimensions defined by state laws and existing rules. Under Georgia statutory law the Commission has general supervision of all electric light and power companies within the state and is authorized to require such companies "to establish and maintain such public service and facilities as may be reasonable and just." Ga.Code Ann. § 93–307.

The Commission is vested with the exclusive power to determine what are "just and reasonable rates." Ga.Code Ann. § 93–309. No charge shall be made by any utility in any rate "except after 30 days' notice to the commission and to the public, *unless the commission otherwise orders.*" (emphasis added) Ga. Code Ann. § 93–307.1(a). The statute goes on to provide how such notice should be given and the information to be contained therein. The Commission, for good cause shown, may allow changes to take effect without requiring the 30 days' notice upon certain contingencies. The Commission has authority to enter after written complaint "at once, and, if it so orders, without answer or formal pleading by the utility but upon reasonable notice" upon a hearing concerning the lawfulness of any rate. Ga.Code Ann. § 93–307.1(b). At any hearing involving a rate increase, the burden of proof to show that the increased rate is "just and reasonable" is upon the utility. Ga.Code Ann. § 93–307.1(b). General Rule 15 of the Commission's laws and rules provides that on all applications notice shall be given to the persons interested in, or affected thereby, ten (10) days before a hearing and given an opportunity to be heard. The rule further provides that all exhibits and written testimony to be introduced at a hearing as evidence in rate cases must be filed with the Commission ten (10) days prior to the assigned date of the hearing. Upon a motion to reconsider, if the Commission decides to reopen the hearing for additional evidence, ten (10) days' notice thereof shall be given to all parties of record. The rule provides that the Commission may vary or relax its provisions, "except as to notice of hearing above provided," in the exercise of a sound discretion when it "may be necessary to the attainment of substantial justice; due care being taken in every instance to guard against any injurious surprises." From these provisions the question is whether the plaintiffs derive a "legitimate claim of entitlement" sufficient to invoke constitutional due process protection. The Court concludes that they do not.

A strikingly similar situation was presented to a three-judge court in *Holt v. Yonce*, 370 F.Supp. 374 (D.S.C.1973), *affirmed* 415 U.S. 969, 94 S.Ct. 1553, 39 L.Ed.2d 867 (1974). In that case plaintiffs, customers of the electric and gas company, were challenging the constitutionality of certain statutes under which the utility had put into effect a tempo-

rary rate increase. In dismissing the complaint the Court stated:

"The single issue of consequence presented to this court by the present case is whether these plaintiffs are entitled to a hearing prior to the implementation of the rate increase. . . . What the plaintiffs seek would require that this court analogize an increase in utility rates without a prior hearing to a termination of utility services without a prior hearing and, thus, hold that such increase constitutes a deprivation of property within the concept of the *Fuentes-Sniadach* [*Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1971); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969)] line of cases noted above. To so hold would necessitate that this court extend *Sniadach* and its progeny to an uncharted point not supported by any cited authority. We refuse to sanction such an extension."

While recognizing that increased utility charges may present an extreme hardship on indigent persons, the Court was of the opinion that the State Public Service Commission and the State General Assembly provided the appropriate forums for the parties involved to advance their conflicting positions. This judgment was affirmed by the United States Supreme Court. *Holt v. Yonce*, 415 U.S. 969, 94 S.Ct. 1553, 39 L.Ed.2d 867 (1974).

Another three-judge court decision on this point was rendered in *Sellers v. Iowa Power and Light Company*, 372 F.Supp. 1169 (S.D.Iowa 1974). In that case plaintiffs were residential customers of the power and light utility company. The plaintiffs sought to enjoin further collection of a rate increase until the State Public Service Commission held hearings and determined the legality of the rate increase. The Court stated:

"The ultimate issue is whether the Due Process Clauses of the Fifth and Fourteenth Amendments require notice and hearing prior to the implementation of a proposed rate increase

which is collected under bond and is refundable at interest if determined to be excessive."

372 F.Supp. at 1170.

After an analysis of the *Roth* opinion, the Court concludes:

"We believe plaintiffs' claim of property interest is too broadly stated to be within the protection of the Fourteenth Amendment. In our opinion plaintiffs must show they have a legal entitlement to or a vested right in the rates being charged before the proposed increase, before they can claim any property rights protected by the United States Constitution.

. . . . .

[U]tility customers have no vested rights in any fixed utility rates.

As plaintiffs have no property interest in existing rates which is protected by the Fifth and Fourteenth Amendments, we hold that plaintiffs are not entitled to a procedural due process hearing prior to a determination of the lawfulness of the proposed rate increase . . . .." (citations omitted)

372 F.Supp. at 1172.

This Court finds itself in agreement with these opinions. The plaintiffs have no sufficient "property" interest in a given utility rate increase to invoke the procedural protections of the due process clause of the Fourteenth Amendment. Undoubtedly, the plaintiffs as consumers of a product have an interest in paying a lesser rate for their electricity as opposed to a higher rate. It would be the rare bird indeed whose interest would be otherwise. And in the sense that an increase in rates means a deprivation of a monetary sum—a sum perhaps needed to purchase other necessities of life—the interest that plaintiffs have here is more than an "abstract need or desire" for lower rates.

However, the fact that plaintiffs have an interest in lower electric rates—an interest which they share with all consumers—does not mean that they have a sufficient "property" interest in lower rates to invoke constitutional due

process protection. For one thing, the interest of the plaintiffs is much too general; that is, their interest is shared by practically everyone. In this sense their interest is somewhat "abstract." Of course, the simple fact that an interest is shared by everyone does not automatically mean that it is not deserving of constitutional protection. Nevertheless, it is interesting to note that most of the Supreme Court cases in this area involve either individual claims of entitlement or identifiable classes for whom a benefit was specifically intended. *See e. g. Bloodworth v. Oxford Village Townhouses, Inc.*, 377 F.Supp. 709 (N.D.Ga.1974); *Dew v. McLendon Gardens Associates*, 394 F.Supp. 1223 (N.D. Ga.1975). In short, the constitutional due process clause was not intended to give procedural protection to every person who has an interest in action taken by the state even though that action may affect him by increasing the amount he must pay for a service. The courts are not the only forum wherein an aggrieved person may seek redress. This Court is of the opinion that plaintiffs may not do so in this case as they have no "property" interest sufficient to invoke constitutional protection.

Plaintiffs rely heavily on *Virgin Islands Hotel Association v. Virgin Islands Water and Power Authority*, 465 F.2d 1272 (3rd Cir. 1972), *modifying* 54 F.R.D. 377 (D.V.I.1972), *on remand* 476 F.2d 1263 (3rd Cir. 1973). This was an action filed by a nonprofit corporation whose membership consisted of most of the hotels located in the Virgin Islands to enjoin the Power Authority from continuing to give effect to a change in the electric power rates on the grounds that the Authority "acted in gross disregard of the V.I.W.A.P. Act and of procedural due process." 54 F.R.D. at 379. Jurisdiction in that case was grounded upon the statutory scheme and the plaintiff was found to be a "reliable private attorney general" to litigate the issues of public interest. The decision is inapposite in the case *sub judice* as there is no statute which would even arguably give this Court jurisdiction over the plaintiffs' complaint. In *Virgin Islands* the Court was dealing with an administrative arm of a territorial legislature and found that there had been noncompliance with a statutory duty. The Court did not have to concern itself with whether the plaintiff had a "property" interest in a rate increase sufficient to invoke constitutional protection.

On the basis of the foregoing; the defendants' motions to dismiss are granted and this action is hereby ordered dismissed.