## Action Alliance of Senior Citizens of Greater Philadelphia, Inc. v. Philadelphia Gas Commission

*Phillip P. Kalodner, Andre Dasent* and *Jonathan Stein,* for plaintiffs.

*Stephen Schachman, Joseph Davison* and *Pace Reich,* for defendants.

CHALFIN, *J.,* July 14, 1977—This action in equity raises the novel and important questions of whether and to what extent the Philadelphia Gas Commission is required to hold public hearings before adopting an increase in Philadelphia's gas rates. Plaintiffs, representing the class of Philadelphia's elderly and low income gas consumers, brought this action to enjoin implementation of the 16 percent increase in gas rates adopted by the

commission on May 31, 1977, and to compel the commission to conduct full and meaningful hearings in which all interested persons are heard before implementing any rate increase. The commission contends both that such hearings are not required by the applicable law and that, if they are, plaintiffs were given adequate notice and opportunity to be heard during the commission's proceedings of May 19, 24, 26 and 31.

On May 31, 1977, the Honorable Eugene Gelfand, sitting as the civil motion judge, issued a special injunction enjoining implementation of any rate increase until further order of the court. Judge Gelfand also issued a rule requiring defendants to show cause why the rate increase should not be enjoined until plaintiffs were afforded adequate notice and an opportunity to be heard at hearings regarding the proposed rate increase; the rule was made returnable on June 20, 1977.

On June 20, 21 and 22, this court heard testimony on the matter and, on June 23, 1976, issued an order (a) directing that the Philadelphia Gas Commission conduct full and meaningful hearings, (b) enjoining implementation of any rate increase until after the conclusion of such hearings and (c) directing counsel to meet and prepare for submission to the court a workable schedule and procedure for the hearings. The order stated that the court would file a written adjudication.

The issues here are whether or not the Local Agency Law of December 2, 1968, P.L. 1133, 53 P.S. §11301 et seq., the Public Utility Code of May 28, 1937, P.L. 1053, as amended, 20 P.S. §1141, or due process clause of the Federal or State Constitution requires that Philadelphia's Gas Commission hold public hearings before adopting a gas rate in-

crease and, if so, whether or not the proceedings of May 19, 24, 26 and 31 afforded plaintiffs the requisite notice and opportunity to be heard.

We hold that the Local Agency Law[1] and due process clauses of the Federal and State Constitutions require that reasonable notice and a full and meaningful opportunity to be heard must be afforded all interested parties before the gas commission may validly adopt a rate increase. The gas commission's proceedings of May 19, 24, 26 and 31, we conclude, did not meet this requirement.

## FACTS

On May 19, 1977, the commission held a meeting whereat the Philadelphia Gas Works (PGW) presented its proposed operating budget for fiscal year 1978, which included a proposed rate increase. Notice for the meeting consisted of a paid advertisement appearing in the May 13 Philadelphia Bulletin:

### 014   MEETINGS AND ELECTIONS
**NOTICE OF MEETING**
The Philadelphia Gas Commission will hold a meeting on Thursday, May 19, 1977, at 2 p.m., in Room 401 City Hall
HORACE C. HUTCHISON, JR.
Secretary

At this meeting, the chairman announced that public hearings for the purpose of receiving other interested parties' views would be held five days later, on May 24, 1977, and, if necessary, on May 26 and 31. Formal notice of the May 24 meeting con-

---

1. The gas commission is specifically exempted from regulation by the Public Utility Code: Public Utility Code, 66 P.S. §1141.

sisted of a paid advertisement appearing in the May 21 Philadelphia Bulletin:

### 014 MEETINGS AND ELECTIONS

**PHILADELPHIA GAS COMMISSION**
**NOTICE OF MEETING**
The Philadelphia Gas Commission will hold a meeting on Tuesday, May 24, 1977, at 2 o'clock P.M. in Room 400 City Hall.
This meeting is open to the public.
HORACE C. HUTCHISON, JR.
Secretary

A further meeting was held on May 26; the meeting was advertised in the May 25 Bulletin:

### 014 MEETINGS AND ELECTIONS

**PHILADELPHIA GAS COMMISSION**
**NOTICE OF MEETING**
The Philadelphia Gas Commission will hold a meeting on Thursday, May 26, 1977, at 2 o'clock P.M., in Room 400 City Hall.
This meeting is open to the public.
HORACE C. HUTCHISON, JR.
Secretary

No evidence was presented as to whether notice regarding the May 31 meeting was published.

Our review of the transcript of proceedings before the gas commission discloses the following. Plaintiffs were not permitted an opportunity to be heard at the meeting of May 19. At the May 24, 26 and 31 meetings, several of plaintiffs were permitted to make statements of record, submit written questions in advance to which answers were read into the record by PGW officials and ask questions of the officials through the chairman; cross-examination of PGW officials was not permitted.

At trial plaintiffs demonstrated that upon reasonable notice and access to various financial documents publicly released by PGW, they would be prepared to present expert testimony regarding its operations and rate structure. Their counsel also demonstrated they would then be prepared to conduct cross-examination of appropriate PGW officials in this regard.

Defendants' evidence indicates that a 30 day

delay in implementing a rate increase would cause the city and defendants "inconvenience but not irreparable harm." Testimony of Lennox L. Moak, Director of Finance for the City of Philadelphia (n.t. 192-94). Mr. Moak, a preeminent expert on the city's financial matters, further testified that the effect of such a delay would be "not significant."

## CONCLUSIONS OF LAW

*Local Agency Law*

Adopted in late 1968, the Local Agency Law is the counterpart at the municipal level to the Administrative Agency Law of June 4, 1945, P.L. 1388, 71 P.S. §1710.1 et seq., on the State level, and the Administrative Procedure Act of September 6, 1966, 80 Stat. 381, as amended, 5 U.S.C.A. §551 et seq., on the Federal level. The central theme is insuring that when governmental agencies adjudicate the rights of parties, they do so in a fair and just manner. This is accomplished by a two-fold approach. First, interested parties are afforded the right to *reasonable* notice and an *opportunity* to be heard before the adjudicating agency, including the right to be represented and conduct *reasonable* examination and cross-examination. Second, those interested parties who are "aggrieved" by a final adjudication have the right to review by the court.

Because the act is in its infancy, it has not yet generated a substantial body of case law. Most of the reported decisions thereunder concern alleged wrongful termination of municipal employes. But we see no reason why this legislation should not be construed as applying to any situation wherein an individual's legal rights are infringed by local governmental action which falls within the purview of this law.

Plaintiffs here seek judicial review of the gas commission's action in ordering a rate increase by invoking the right of appeal embodied in the act, 53 P.S. §11307, which provides:

"Any person aggrieved by a final adjudication who has a direct interest in such adjudication shall have the right to appeal therefrom. Such appeal, unless otherwise provided by a statute authorizing a particular appeal, shall be taken within thirty days to the court of common pleas of any judicial district in which the local agency has jurisdiction." We construe this section as setting forth a three-fold jurisdictional prerequisite: plaintiff must be one who (1) has a "direct interest" in and (2) is "aggrieved" by (3) a "final adjudication" of a local agency.[2]

Plaintiffs meet the "direct interest" test. As customers of PGW, plaintiffs use and pay for gas. Consequently, they have a genuine and substantial interest in gas rates and a direct interest in the commission's decision.

The commission's action is a "final adjudication" within the meaning of the act. According to the definitional section, 53 P.S. §11302(1): " 'Adjudication' means any . . . decision, determination or ruling by a local agency affecting personal or property rights, privileges, immunities or obligations of any or all of the parties to the proceeding. . . . "

---

2. The gas commission is clearly a "local agency" as defined by the act, 53 P.S. §11302(2): "Local Agency" means any . . . commission . . . of a political subdivision . . . empowered to determine or affect private rights, privileges, immunities or obligations by adjudication. . . . " See Philadelphia Home Rule Charter, §33-100(f) and §5.5-902 (1951).

The gas commission's adoption of the 16 percent rate increase by vote on May 31 is certainly a final "decision, determination or ruling." The rate increase would, of course, "affect" the "obligations" of all gas company customers, including plaintiffs. We therefore conclude that the commission's action meets the final adjudication requirement.

Plaintiffs are aggrieved within the meaning of the act in that their right to reasonable notice and an opportunity to be heard before the commission was violated. The act, 53 P.S. §11304, provides that "[n]o adjudication shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." Further, "[r]easonable examination and cross-examination shall be permitted." 53 P.S. §11305. Our Supreme Court recently explained that "a reading of the Local Agency Law in its entirety leads to the conclusion that the Act was intended to encompass 'adjudications' in which the parties are given an opportunity to present evidence either in support or against the propositions being undertaken." Citizen's Committee to Recall Rizzo v. Board of Elections of Philadelphia, 470 Pa. 1, 367 A. 2d 232, 236 (1976).

Here, interested parties were not afforded "reasonable notice" before the commission deliberated on the proposed rate increase. As set forth supra, the first formal notice that such deliberations were to take place consisted of a small paid advertisement *six days* before the May 19 meeting. The notice stated only that a Gas Commission "meeting" would be held; it did not state that the subject of the meeting was a rate increase or that interested parties would be given an opportunity to be heard.

This is inadequate notice both as to time and

mode. Even if we view the time interval in a light most favorable to the *commission* (using May 31 instead of May 19, 24 or 26 as the date of the "hearing"), the public was given a mere eighteen days to prepare its case.[3] This amount of time does not approach the standard of what is "reasonable notice."[4] What constitutes reasonable notice should properly depend on the circumstances presented. We believe that where as here the subject matter involves reviewing numerous complicated documents and complex factual issues which requires substantial time in preparation for hearings, at least two months notice is required. While not directly applicable here, the 1976 amendment to the Public Utility Code offers a recent example of the type of notice and opportunity to be heard that our state legislature has deemed adequate in utility rate hearings. Act 215, Session of 1976, amends the Public Utility Code by providing up to a *seven month* moratorium on any proposed rate increase, to allow public scrutiny. It also provides beefed-up procedures for affording the public an opportunity to be heard. Since the notice here did not approach

---

3. The commission contends that the public was given adequate notice in that various newspaper articles (not paid advertisements) appearing as early as December, 1976, portended a gas rate increase. We reject this contention on several grounds. First, the gas company's official position during much of this time was that whether a rate increase would be necessary was not yet finally determined. Second, a perusal of these articles leaves the reader in doubt as to whether or not an increase was a certainty. But, most importantly, we reject the notion that the reasonable notice requirement of the Local Agency Law is met whenever the press may report on a matter which may be the subject of administrative action. We think the act requires more.

these guidelines, we conclude the act's requirement of reasonable notice was not satisfied.[5]

Another defect in the commission proceedings was that plaintiffs were not afforded a reasonable opportunity to conduct cross-examination of PGW officials. Local agencies, of course, are not bound by technical rules of evidence and the presiding official should surely be permitted to conduct the hearing informally. However, cross-examination "through the chair," we conclude, does not meet the act's requirement of reasonable cross-examination, nor does the reading into the record of answers to questions prepared in advance without permitting follow-up questions. Plaintiffs or their representatives should have been allowed a reasonable opportunity to question PGW officials directly.

---

4. In Virgin Islands Hotel Ass'n. v. Virgin Islands Water & Power Authority, 465 F. 2d 1272 (3rd Cir. 1972), a 20 percent electric rate increase was enjoined where statutory requirements for notice and hearings had not been followed. The Court of Appeals for the Third Circuit declared:

"These essential requirements were not met in the instant case. The hearings were begun one week after the press release regarding the rate increases. The rate study on which the new rate structure was based was not generally available. We agree with the district court's finding that the underlying facts involved in the announced increase were quite complex and that a week was far too little time for the public to marshal its forces and prepare a case in opposition to the increase. Moreover, the failure of the Authority to make generally available the primary source for its determination that increases were necessary only underscores the shortcomings of these hearings." 465 F. 2d at 1276.

5. Allowing proper lead time, notice of the hearings and their subject matter could have been enclosed with each customer's gas bill. This would have clearly met the act's notice requirement.

For these reasons, we conclude that plaintiffs' right to reasonable notice and opportunity to be heard was violated.

## Due Process

Plaintiffs contend that the due process clauses of the Federal and State Constitutions require that interested parties be afforded notice and an opportunity to be heard before the gas commission can validly adopt a rate increase. Defendants contend that no such right exists.

Throughout the 1970's, the law in these so-called entitlement cases has been unsettled. Cf. concurring opinions by Stewart and Powell, *JJ*. and dissenting opinion by Blackmun, *J.*, in North Georgia Finishing v. Di-Chem, 419 U.S. 601 (1975). We shall thus be guided by the reasoning expressed in the United States Supreme Court's most recent pronouncement, Goss v. Lopez, 419 U.S. 565 (1975). In Goss the court held that an Ohio statute which permitted a student to be suspended for misconduct without notice and hearing violated the due process clause. We view Goss as rejecting the theory that procedural due process attaches *only* to constitutionally *created* rights; the decision repudiates the concomitant approach that unless a given interest rises to the level of being deemed fundamental, a deprivation thereof is not a due process violation:

"At the outset, appellants contend that because there is no constitutional right to an education at public expense, the Due Process Clause does not protect against expulsions from the public school system. This position misconceives the nature of the issue and is refuted by prior decisions. The Fourteenth Amendment forbids the State to de-

prive any person of life, liberty, or property without due process of law. Protected interests in property are normally 'not created by the Constitution. Rather, they are created and their dimensions are defined' by an independent source such as state statutes or rules entitling the citizen to certain benefits." 419 U.S. at 572-73.

Procedural due process requirements, then, apply to all legally cognizable interests; when the government infringes such an interest without first affording the aggrieved person procedural safeguards, the Fourteenth Amendment is violated.

Applying this analysis here, plaintiffs are constitutionally entitled to procedural due process if "an independent source such as a state statute . . ." grants them an interest in the gas rate structure. Such a statutory basis does exist here. Our law mandates that "[e]very rate made, demanded, or received by any public utility . . . shall be just and reasonable. . . ."[6] 66 P.S. §1141. Thus, Pennsylvania law grants plaintiffs a protected interest in a

---

6. Although this provision exempts PGW (and other municipal gas companies operating only within their municipality) from *regulation* by the Public Utility Commission, a careful reading of the statute discloses that the law *does not* exempt PGW from the mandate that rates "shall be just and reasonable." The entire provision reads as follows:

"Every rate made, demanded, or received by any public utility, or by any two or more public utilities jointly, shall be just and reasonable, and in conformity with regulations or orders of the [Public Utility] commission: Provided, That only public utility service being furnished or rendered by a municipal corporation, or by the operating agencies of any municipal corporation, beyond its corporate limits, shall be subject to regulation and control by the commission as to rates, with the same force, and in like manner, as if such service were rendered by a public utility." 66 P.S. §1141.

"just and reasonable" gas rate structure which cannot validly be changed before affording gas consumers notice and an opportunity to be heard.

We are aware that our holding is in apparent conflict with three Federal district court decisions: George Power Project v. Georgia Power Co., 409 F. Supp. 332 (N.D. Ga. 1975); Sellers v. Iowa Power and Light Co., 372 F. Supp. 1169 (S.D. Iowa 1974); Holt v. Yonce, 370 F. Supp. 374 (D. S.C. 1973). We do not pause to reconcile these decisions with our holding since they were either decided before or did not apply Goss, which we believe has changed their doctrinal underpinnings.

Moreover, our holding is in accord with that of the Honorable John P. Fullam of the District Court for the Eastern District of Pennsylvania in a more recent decision: Dawes v. Philadelphia Gas Commission et al., 421 F. Supp. 806 (E.D. Pa. 1976). Dawes, interestingly enough, was a Federal civil rights action against PGW and other related defendants alleging that plaintiffs were deprived of procedural due process when PGW terminated their service (for alleged nonpayment of bills) without first affording them notice and an opportunity to be heard. Judge Fullam held, inter alia, that the statute mandating that all public utilities furnish and maintain adequate, efficient, safe and reasonable service and facilities without unreasonable interruption or delay constituted an independent statutory source within the meaning of Goss, so that plaintiffs' gas service could not properly be terminated except in a manner consistent with due process of law: 421 F. Supp. at 817. We think Judge Fullam's scholarly and well-reasoned analysis correctly represents the current state of the law in entitlement cases.

For these reasons, we conclude that plaintiffs and other interested parties are constitutionally entitled to adequate notice and an opportunity to be heard before a gas rate increase can validly be adopted by the gas commission.

Our conclusion is the same applying the due process clause embodied in Pennsylvania's Constitution. Article 1, §11, is phrased more broadly than its Federal counterpart:

"All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."

Moreover, State courts, including Pennsylvania, are free to, and often do, construe their own due process clauses more broadly than the Federal Constitution. See, e.g., Com. v. Triplett, 462 Pa. 244, 341 A. 2d 62 (1975); see also, In the Matter of James Sharpe, Jr., 248 Pa. Superior Ct. 74, 374 A. 2d 1323 (1307 October term, 1976, filed June 29, 1977) (concurring and dissenting opinion by Spaeth, *J.*). Our courts have consistently held that due process applies to administrative proceedings as well as judicial proceedings. See, e.g., Begis v. Industrial Board of Department of Labor and Industry, 9 Pa. Commonwealth Ct. 558, 308 A. 2d 643 (1973). Therefore, we think that Pennsylvania's Constitution mandates no less "due process" than that required by the Local Agency Law and the United States Constitution.

## CONCLUSION

During this period of rapid inflation we must expect that the cost of all goods and services will escalate. Gas consumers, of course, enjoy no special exemption. Indeed, the energy situation being what it is, gas rate increases along with other energy sources may very well set the pace for inflation. This is unfortunately a matter of fact over which the court, like the consumer, has no control.

PGW, however, being a public utility and a governmentally created monopoly, should be responsive to the consumer in its service and rate structure—consumers should be informed about and allowed to participate in the formal review of rate hike proposals. This court passes no judgment on the need for and amount of such an increase, as this is not our proper function. We merely hold that common sense, State and Federal law mandate that the gas commission afford citizens reasonable notice and a full and meaningful opportunity to be heard before imposing a rate increase on the gas consumers of this city.

For these reasons, we enter the following

## DECREE

And now, July 14, 1977, in accordance with the foregoing, this court's order dated June 23, 1977, is hereby entered as the decree nisi in this case. This decree shall be entered by the prothonotary as the final decree unless exceptions to this adjudication are filed within 20 days hereof.