**GAS SERVICE COMPANY et al.,**
Petitioners,

v.

**FEDERAL POWER COMMISSION,**
Respondent,
Cities Service Gas Company, Intervenor.

No. 15401.

United States Court of Appeals
District of Columbia Circuit.

Argued May 18, 1960.

Decided July 21, 1960.

Petition for Rehearing En Banc Denied
Sept. 19, 1960.

Mr. J. David Mann, Jr., Washington, D. C., with whom Messrs. William W. Ross and William J. Curtin, Washington, D. C., were on the brief, for petitioners.

Mr. Peter H. Schiff, Atty., Federal Power Commission, with whom Messrs. Willard W. Gatchell, Gen. Counsel, Federal Power Commission, and Howard E. Wahrenbrock, Solicitor, Federal Power Commission, were on the brief, for respondent.

Mr. Harry S. Littman, Washington, D. C., with whom Messrs. Jack Werner, Dale A. Wright and Harold L. Talisman, Washington, D. C., were on the brief, for intervenor.

Mr. Reuben Goldberg, Washington, D. C., filed a brief on behalf of Mississippi Valley Gas Co., as amicus curiae, urging reversal.

Before WILBUR K. MILLER, DANAHER and BASTIAN, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Cities Service Gas Company, which transports and sells natural gas in interstate commerce for resale, is a "natural-gas company" within the meaning of the Natural Gas Act.[1] Schedules showing its rates and charges for any transportation or sale subject to the jurisdiction of the Federal Power Commission are on file with the Commission and are incorporated into the service agreements with distributors. Cities Service, like any other wholesaler, is authorized by Section 4(d) of the Act to change its rates and charges by filing new schedules, which are subject, however, to investigation and regulation by the Commission as provided in Section 4(e).[2]

On May 21, 1959, Cities Service tendered to the Commission for filing, revised rate schedules to become effective June 23, 1959, which increased its prices generally, including the price of gas sold for resale for industrial use only. On June 19, 1959, the Commission ordered a hearing to be held concerning the lawfulness of such increased rates, and suspended the operation of the newly filed schedules and deferred the use of the rates fixed thereby for a period of five months beyond the time when they would otherwise have gone into effect; except that, because of the prohibitory provision of Section 4(e), it did not suspend the rates for the sale of gas for resale for industrial use only. The schedules

[1]. 15 U.S.C.A. § 717 et seq.

[2]. The pertinent portion of Section 4(e) is as follows:

"Whenever any such new schedule is filed the Commission shall have authority, either upon complaint of any State, municipality, or State commission, or upon its own initiative without complaint, at once, and if it so orders, without answer or formal pleading by the natural-gas company, but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, charge, classification, or service; and, pending such hearing and the decision thereon, the Commission, upon filing with such schedules and delivering to the natural-gas company affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the time when it would otherwise go into effect: *Provided*, That the Commission shall not have authority to suspend the rate, charge, classification, or service for. the sale of natural gas for resale for

282 F.2d—32

industrial use only; and after full hearings, either completed before or after the rate, charge, classification, or service goes into effect, the Commission may make such orders with reference thereto as would be proper in a proceeding initiated after it had become effective. If the proceeding has not been concluded and an order made at the expiration of the suspension period, on motion of the natural-gas company making the filing, the proposed change of rate, charge, classification, or service shall go into effect. Where increased rates or charges are thus made effective, the Commission may, by order, require the natural-gas company to furnish a bond, to be approved by the Commission, to refund any amounts ordered by the Commission, to keep accurate accounts in detail of all amounts received by reason of such increase, specifying by whom and in whose behalf such amounts were paid, and, upon completion of the hearing and decision, to order such natural-gas company to refund, with interest, the portion of such increased rates or charges by its decision found not justified. * * *"

for sales for resale for industrial use were permitted to become effective on June 23, 1959, prior to the hearing which had been ordered, and without a bond or other provision for refund of the portion thereof which might be found not justified.

The Gas Service Company, a local distributor which purchases natural gas from Cities Service, some of which it resells for industrial use only, petitioned for intervention before the Commission and for rehearing. Similar petitions were filed by others who alleged they were aggrieved by the order. Intervention was permitted but rehearing was denied. Gas Service and the others who had intervened in the proceeding before the Commission have petitioned for judicial review of the Commission's order under Section 19(b) of the Natural Gas Act.

The question before us is, therefore, whether the Commission has the power under Section 4(e) to require Cities Service to file a bond to refund any part of the increased industrial rates ultimately found to be unlawful.

■ The section provides that, pending a hearing and decision concerning the lawfulness of newly filed schedules, the Commission may suspend them for not longer than five months, except *it may not suspend rates for resale for industrial use only*. The statute also provides: "If the proceeding has not been concluded and an order made at the expiration of the suspension period, on motion of the natural-gas company making the filing, the proposed change of rate, charge, classification, or service shall go into effect." Immediately following the sentence just quoted, the statute provides: "Where increased rates or charges are *thus*[3] made effective, the Commission may * * *" require a bond. The word "thus" is the key that locks the Commission's bonding privilege into the preceding sentence and confines its exercise to the situations

there described. These two statutory sentences should, therefore, be read together. They mean, we think, only what they say: that where increased rates have been suspended and are made effective at the end of the suspension period, the Commission may require a bond.

There is no provision permitting the Commission to require a bond as a prerequisite to the effectiveness of new industrial rates. Had Congress intended to give the Commission such authority, it could easily have done so. Instead, it chose to authorize a bond only with respect to rates which had been suspended, having first expressly withheld the power of suspension with respect to industrial rates. We regard Section 4(e) as unambiguous, so we do not need to consider the legislative history which both parties urge upon us as supporting their opposing contentions. We think "this is a case for applying the canon of construction of the wag who said, when the legislative history is doubtful, go to the statute."[4]

That history shows, however, that Congress had a rational basis for making the distinction between industrial and other rates as to suspension and refund, —a distinction which we think clearly appears from the statute. We agree with the following statement in Pacific Natural Gas Co. v. Federal Power Comm., 9 Cir., 1960, 276 F.2d 350, 354:

"When the bill [which became the Natural Gas Act] was reintroduced at the next session of the Congress, the proviso exempting industrial gas from all regulation had been deleted. However, on the floor of the House an amendment was offered, which is presently found in 15 U.S. C.A. § 717c(e), exempting industrial gas from the Federal Power Commission's power to suspend rates, and *exempting industrial gas from the discretionary power of the Commission to require security from the supplier to make reparations in cases*

---

3. Our emphasis.

4. Greenwood v. United States, 1956, 350 U.S. 366, 374, 76 S.Ct. 410, 415, 100 L. Ed. 412.

*where new rates are set aside by the Commission as unreasonable after the period of suspension has expired.* See 81 Cong.Rec. 6727 (1937). This compromise provision apparently was acceptable to those who originally had opposed any and all regulation of industrial gas. Moreover, Representative Lea, the draftsman of both bills, noted that contracts for industrial gas were, at that time anyway, usually of short-term duration, and that the effect of the proviso was to prevent suspension when such short-term contracts were involved. See Ibid. at 6727–28. We cannot escape the conclusion that the Congress had a rational basis for saying that industrial gas needed less regulation than non-industrial gas." (Emphasis added.)

Our interpretation of Section 4(e) is buttressed by the fact that, since the beginning, the Commission's consistent construction has been that the section does not grant authority to require a bond and refunding procedure before permitting a change in industrial rates to become effective; and by the further fact that the Commission thinks it should have that power and has unsuccessfully requested Congress to confer it.[5]

The question before us as to the meaning of Section 4(e) has not been squarely presented to the Supreme Court. But on two occasions that Court has implied or assumed the Commission cannot require a refunding bond with respect to new industrial rates while they are being investigated. These indications of the Supreme Court's view appear in United Gas Pipe Line Co. v. Mobile Gas Service Corp., 1956, 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373, and United Gas Pipe Line

Co. v. Memphis Light, Gas and Water Division, 1958, 358 U.S. 103, 79 S.Ct. 194, 3 L.Ed.2d 153.

In the Mobile case, the Court said, 350 U.S. at page 341, 76 S.Ct. at page 379:

"The powers of the Commission are defined by §§ 4(e) and 5(a). The basic power of the Commission is that given it by § 5(a) to set aside and modify any rate or contract which it determines, after hearing, to be 'unjust, unreasonable, unduly discriminatory, or preferential.' This is neither a 'rate-making' nor a 'rate-changing' procedure. It is simply the power to review rates and contracts made in the first instance by natural gas companies and, if they are determined to be unlawful, to remedy them. Section 5(a) would of its own force apply to *all* the rates of a natural gas company, whether long-established or newly changed, but in the latter case the power is further implemented by § 4(e). All that § 4(e) does, however, is to add to this basic power, in the case of a newly changed rate or contract (except 'industrial' rates), the further powers (1) to preserve the status quo pending review of the new rate by suspending its operation for a limited period, and (2) thereafter to make its order retroactive, by means of the refund procedure, to the date the change became effective. * * * "

We observe that "the further powers" added to the basic power of the Commission by Section 4(e) apply "in the case of a newly changed rate or contract (except 'industrial' rates) * * *." Therefore, the Supreme Court was saying that, as to industrial rates, the Commission can-

5. See e. g., Annual Reports of the Federal Power Commission for 1951–1959, at pp. 144, 152, 154, 170, 181, 18, 24, 16, 19, respectively. As these reports show, numerous unsuccessful bills have also been introduced to accomplish this purpose. For other recommendations to the same effect, see also the Commission's report to Congress on H.R. 5070, 76th Cong. (not published); Hearings before the Special Senate Committee to Investigate the Fuel Situation in the Middle West, 78th Cong., 1st Sess. 748; S.Rep. No. 1234, 78th Cong., 2d Sess. 4; Hearings before a Subcommittee of the Senate Committee on Interstate and Foreign Commerce on H.R. 4051, 80th Cong. 2d Sess. 97–99.

not "make its order retroactive, by means of the refund procedure, to the date the change became effective."

The Supreme Court indicated the same view in the Memphis case, when it said, 358 U.S. at page 113, 79 S.Ct. at page 200:

> "* * * The Act comes into play as to rate changes only in (1) imposing upon the seller the procedural requirement of filing timely notice of change, (2) giving the Commission authority to review such changes, and (3) authorizing the Commission, in the case of rates for sales of gas for other than exclusively industrial use, to suspend the new rates for a five-month period and thereafter to require the posting of a refund bond pending a determination of the lawfulness of the rates as changed. * * *"

Petitioners argue that if Section 4(e) does not empower the Commission to require a refunding bond as a condition precedent to the effectiveness of newly filed industrial rates, it is unconstitutional because it deprives them of their property without due process of law, and unlawfully delegates to Cities Service the legislative authority to fix its own industrial rates.

Deprivation of property is visualized because it is said industrial customers *must* pay the newly filed rates without the protection of a refunding bond. The customers of Cities Service agreed, we observe, to pay the rates contained in schedules filed with the Commission for such industrial and other gas as they might buy; and they agreed that Cities Service might change its rates as it has done here. But they are not contractually bound to purchase gas under the new industrial schedules: they may use stand-by facilities, which they agreed to maintain, employing some other fuel if they find it cheaper than natural gas. Moreover, the statute does not require that a bond be exacted even in regard to the rates which are subject to refund

procedure; it merely permits the exaction. So, if the bond and refund provisions applied to industrial rates, they would do no more than confer discretion on the Commission and would not give petitioners a right to the protection of a bond. Certainly the Constitution itself grants no such right. We think the unconstitutional deprivation theory is not well founded.

We cannot accept the argument that Section 4(e), as construed by the Commission, unlawfully delegates to a wholesaler such as Cities Service the legislative authority to fix its own rates. The Natural Gas Act does not delegate rate-making power to natural gas companies. The companies had that power before the passage of the Act and it was neither conferred nor enlarged by the legislation. This is seen in the Mobile case where the Supreme Court said, 350 U.S. at page 343, 76 S.Ct. at page 380:

> "All of the relevant provisions of the Act can thus be fully explained as simply defining and implementing the powers of the Commission to review rates set initially by natural gas companies, and there is nothing to indicate that they were intended to do more. Admittedly, the Act presumes a capacity in natural gas companies to make rates and contracts and to change them from time to time, but nowhere in the Act is either power defined. The obvious implication is that, except as specifically limited by the Act, *the rate-making powers of natural gas companies were to be no different from those they would possess in the absence of the Act:* to establish *ex parte,* and change at will, the rates offered to prospective customers; or to fix by contract, and change only by mutual agreement, the rate agreed upon with a particular customer * * *." (Our emphasis.)

Constitutional arguments substantially the same as those made by the petitioners were urged upon and rejected by the Ninth Circuit in the Pacific Natural case.

We are of the view that the opinion in that case is correct and, therefore, we regard it as dispositive of those arguments here.

The order of the Federal Power Commission will be upheld.

Affirmed.

BASTIAN, Circuit Judge, dissents, believing that the Natural Gas Act, Section 4(e), provides authority in the Federal Power Commission to require a bond to refund excess charges collected under the revised schedules in question, and that the legislative history, as well, so indicates.