STATE ex rel. JACKSON COUNTY, Missouri, and Kansas City, Missouri, Relators-Respondents,

Office of Public Counsel, Intervenor-Relator,

v.

PUBLIC SERVICE COMMISSION of Missouri, Respondent-Appellant,

Missouri Public Service Company, Intervenor-Respondent-Appellant.

No. 59171.

Supreme Court of Missouri, En Banc.

Dec. 22, 1975.

Dissenting Opinion on 'Denial of Rehearing Feb. 9, 1976.

Stanley P. Christopher, Deputy County Counselor, Kansas City, Jeremiah D. Finnegan, Special County Counselor, Russell D. Jacobson, Associate County Counselor, Kansas City, for Jackson County.

Carrol C. Kennett, Associate City Atty., Kansas City, for Kansas City.

William M. Barvick, Jefferson City, for Office of Public Counsel.

William W. Ely, Blue Springs (for City of Blue Springs), Arthur Doyle and David L. Smith, Kansas City (for K. C. Power & Light), Stewart W. Smith, Jr., and William E. Jaudes, St. Louis (for Union Elec.), Shook, Hardy & Bacon, Kansas City (for City of Grandview), amici curiae.

MORGAN, Judge.

On June 13, 1975, the Public Service Commission of Missouri (herein referred to as the Commission) issued its Report and Order in Case No. 18,180 authorizing the Missouri Public Service Company (herein referred to as the Company) to increase its electric rates on July 1, 1975, to provide $5,593,000. in additional annual revenues. Applications for rehearing were filed by all parties to the proceeding, which were denied without further hearing on July 8, 1975. On July 11, 1975, the city of Kansas City and the county of Jackson (herein referred to as the Consumers) filed a joint petition in the trial court for a Writ of Review pursuant to §§ 386.510 and 386.520 (all statutory references herein being to RSMo 1969, V.A.M.S.) and a joint Motion for Immediate Reversal, Stay, Injunction or Impoundment of Funds. The Company filed a motion seeking dismissal of both the petition and motion. On July 17, 1975, the trial court, before the certified record of the proceedings before the Commission were before it, held hearings on the two motions. Thereafter, the Company's motion to dismiss was overruled and that of the Consumers for "immediate relief" was sustained by judgment entry, which, in part, provided:

1.  The report and order of respondent in its No. 18,180 is reversed for noncom-

Byron E. Francis, Jefferson City, for Pub. Service Comm.

Gary J. Brouillette, Kansas City, for Mo. Pub. Service Co.

pliance with Section 393.270, V.A.M.S.

2. Alternatively said report and order is reversed and the proceeding remanded to respondent for consideration and determination of relators' application for rehearing in compliance with Sections 386.130 and 536.080, V.A.M.S.

3. The relief granted in the preceding paragraph two shall be effective only in the event that an appellate court should prohibit the relief granted in paragraph one.

4. The writ of review or certiorari is quashed.

Pursuant to Supreme Court Rule 81.06, the trial court declared the same to be a final appealable judgment, and stayed the enforcement thereof if the Company posted bond in the amount of $5,600,000. Since appeal, briefs have been filed (including that of other utility companies as Amici Curiae), and oral arguments made by all concerned (including the "Public Counsel").

It is necessary to relate some of the history behind the present litigation, most of which is outlined in footnote No. (1).[1] Of

1. August 5, 1974—Appellant filed revised tariffs and rules and regulations requesting increased rates for electric service to its Missouri customers. This was eventually designated Commission Case No. 18,180.

August 15–21, 1974—Commission counsel, Acting Public Counsel, Jackson County and Kansas City filed Motions to Dismiss the August 5, 1974, tariffs filed by Appellant premised upon the two-year "moratorium."

August 21, 1974—The Commission issued its Order setting hearing and briefs to be filed in Case No. 17,763 and later changed the case designation to Case No. 18,174.

August 27, 1974—A hearing was held on the four motions filed praying for the dismissal of the electric tariffs filed by Appellant on August 5, 1974, before the Commission. During the hearing, evidence was submitted to the Commission indicating circumstances which had changed in the Appellant's operations since the Commission's Order of December 14, 1973.

September 3, 1974—The Commission, after having designated the electric filing of August 4, 1974, of Appellant as Case No. 18,180, issued a Suspension Order suspending until January 2, 1975, the requested effective date of the tariffs.

September 3, 1974—Jackson County, Missouri, filed its Petition for Injunction, Temporary Injunction, Temporary Restraining Order and Preliminary Mandatory Injunction in the Jackson County Circuit Court presided over by the Honorable J. Donald Murphy, Circuit Judge.

September 6, 1974—The Commission issued its Order in Case No. 18,174 wherein it overruled the Motions to Dismiss Appellant's tariffs.

September 10, 1974—The Honorable J. Donald Murphy of the Circuit Court of Jackson County issued his opinion in the injunction action generally dismissing the cause filed by Jackson County, Missouri, finding, in part, after arguments and briefs had been heard and submitted, that the moratorium as applied to Appellant, under the then existing circumstances, was unconstitutional and in violation of Article I, Section 10 of the Constitution of the State of Missouri and of the Fifth and Fourteenth Amendments to the United States Constitution. Circuit Court Case No. 783,082 (Exhibit 8).

September 26, 1974—Jackson County, Missouri, filed a Complaint against the Commission requesting an order of the Commission directing that the schedules of increased rates transmitted to the Commission on August 5, 1974, be stricken from the files of the Commission. This Complaint was designated as Commission Case No. 18,193.

October 8, 1974—Jackson County, Missouri, filed its Motion to Dismiss the schedules of increased rates received by the Commission August 5, 1974, in Case No. 18,180.

November 26, 1974—Jackson County, Missouri, filed in Case No. 18,193 its Motion for Immediate Relief waiving hearing and oral argument and requesting a determination of the matter. The Commission subsequently dismissed this complaint from which Jackson County filed a Petition for Writ of Review in the Circuit Court of Cole County, Missouri. (That Petition for Writ of Review was subsequently denied by the Circuit Court of Cole County, Missouri, on June 10, 1975, after briefs and arguments had been submitted to the Court.) Jackson County did not appeal the decision of the Circuit Court of Cole County. Cole County Circuit Court Case No. 27,539 (Division 1).

December 18, 1974—The Commission issued its Order denying the Motions to Dismiss in Case No. 18,180, stating that in effect the exact issues had already been ruled upon in the case numbered 18,174 and incorporating the reasoning therefor used in Case No. 18,174 which had found that the applicant, Missouri Public Service Company, had adduced sufficient evidence to establish a prima facie showing of substantial and altered circumstances.

immediate concern, however, is that part occurring on December 14, 1973. On that date, the Commission issued its Report and Order in Case No. 17,763 which was the proceeding wherein the Company was last granted a tariff increase, prior to its request in No. 18,180—the present case. Therein, the Commission stated:

Based upon a thorough analysis of the updated and projected test year presented in this case, the Commission concludes that it should not entertain a request by the applicant for any further additional rate relief from its electric customers for a period of at least two years after the effective date of this Order, inasmuch as the Commission is of the opinion that a substantial portion of the applicant's certified area can be reasonably expected to expand and develop so as to favorably affect the Company's revenue growth and minimize the need for additional rate relief. Furthermore, the record requires the Commission to conclude that this anticipated growth should not require significant capital investments and generating capacity. Applicant's costly Sibley generating plant was constructed in anticipation of this reasonably expected growth and the Commission is of the opinion that under good management practices, applicant should not require significant additional generating capacity and the high financing costs associated therewith.

Premised thereon, the Commission provided in "Order 3" of its Report and Order (in No. 17,763) as follows:

3. That the prices, charges, rates and tariffs filed herein shall be the maximum to be charged by Missouri Public Service Company for electric service to be furnished within its territory *for a period of at least two years from the effective date*

*of this Order* except in the case of sliding scales and automatic adjustments as heretofore or hereafter approved by this Commission pursuant to § 393.270, ¶ 3, R.S.Mo.1969. (Emphasis added.)

It seems agreed that the parties involved did not address the "moratorium" issue during the hearing and proceedings in No. 17,-763. Apparently it was supplied by the Commission on its own without the knowledge of any of the parties prior to entry thereof. In any event, there was no appeal. However, the significance thereof and its relevancy, if any, to the instant appeal will be considered in turn.

In their joint motion, the Consumers challenged the Commission Order in No. 18,180 by asserting that:

1. The Commission did not have authority to "change or abrogate" the moratorium of two years previously ordered (referred to by some of the parties as a "period of repose").

2. The Commission erroneously failed to base the now challenged rate schedule on a test year, i. e., actual experience reference income and expenses; but, in fact, utilized a year composed of eight months actual experience and four months estimated or projected income and expense.

3. The Commission denied the Consumers' application for a rehearing in violation of § 386.130, which requires, in part, that a ". . . majority of the commissioners shall constitute a quorum . . ." when the denial thereof was made by a lesser number.

4. The rate increase authorized by the Commission was initiated by the "file and suspend" method (§ 393.140(11)) and is a nullity, because a rate increase can only be considered under the "complaint" method (§§ 386.390–393.260, 393.270).

December 30, 1974—The Commission issued its Suspension Order No. 2 in Case No. 18,180 extending the suspension of tariff revisions from January 2, 1975, to July 2, 1975. Beginning April 21, 1975, and continuing on April 22, 23, 24, 25, 28, 29, 30 and May 1, 2, 5 and 6 of 1975, evidentiary hearings were held before the Commission on Appellant's rate increase request. Briefs were filed by Appellant, Commission Counsel, Public Counsel of Missouri and Relators on June 3, 1975. Oral argument by all parties was heard by the Commission on June 5, 1975.

We first consider the last point (No. 4) for the reason the other three become somewhat moot if the Consumers' contention therein is well founded.

Necessarily, some portions of the many statutes involved must be quoted.

Section 393.140(11): Have power to require every gas corporation, electrical corporation, water corporation, and sewer corporation to file with the commission and to print and keep open to public inspection schedules showing all rates and charges made, established or enforced or to be charged or enforced, all forms of contract or agreement and all rules and regulations relating to rates, charges or service used or to be used, and all general privileges and facilities granted or allowed by such gas corporation, electrical corporation, water corporation, or sewer corporation; but this subdivision shall not apply to state, municipal or federal contracts. *Unless the commission otherwise orders, no change shall be made in any rate* or charge, or in any form of contract or agreement, or any rule or regulation relating to any rate, charge or service, or in any general privilege or facility, which shall have been filed and published by a gas corporation, electrical corporation, water corporation, or sewer corporation in compliance with an order or decision of the commission, *except after thirty days' notice to the commission and publication for thirty days as required by order of the commission,* which shall plainly state the changes proposed to be made in the schedule then in force and the time when the change will go into effect. *The commission for good cause shown may allow changes without requiring the thirty days' notice under such conditions as it may prescribe.* No corporation shall charge, demand, collect or receive a greater or less or different compensation for any service rendered or to be rendered than the rates and charges applicable to such services as specified in its schedule filed and in effect at the time; nor shall any corporation refund or remit in any manner or by any device any portion of the rates or charges so specified, nor to extend to any person or corporation any form of contract or agreement, or any rule or regulation, or any privilege or facility, except such as are regularly and uniformly extended to all persons and corporations under like circumstances. The commission shall have power to prescribe the form of every such schedule, and from time to time prescribe by order such changes in the form thereof as may be deemed wise. The commission shall also have power to establish such rules and regulations, to carry into effect the provisions of this subdivision, as it may deem necessary, and to modify and amend such rules or regulations from time to time. (Emphasis added.)

Section 393.150. 1. Whenever there shall be filed with the commission by any gas corporation, electrical corporation, water corporation or sewer corporation *any schedule stating a new rate or charge,* or any new form of contract or agreement, or any new rule, regulation or practice relating to any rate, charge or service or to any general privilege or facility, *the commission shall have, and it is hereby given, authority, either upon complaint or upon its own initiative without complaint,* at once, and if it so orders without answer or other formal pleading by the interested gas corporation, electrical corporation, water corporation or sewer corporation, but upon reasonable notice, *to enter upon a hearing concerning the propriety of such rate,* charge, form of contract or agreement, rule, regulation or practice, and pending such hearing and the decision thereon, the commission upon filing with such schedule, and delivering to the gas corporation, electrical corporation, water corporation or sewer corporation affected thereby, a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, form of contract or agreement, rule, regulation or practice, but not for a

longer period than one hundred and twenty days beyond the time when such rate, charge, form of contract or agreement, rule, regulation or practice would otherwise go into effect; and after full hearing, whether completed before or after the rate, charge, form of contract or agreement, rule, regulation or practice goes into effect, the commission may make such order in reference to such rate, charge, form of contract or agreement, rule, regulation or practice as would be proper in a proceeding initiated after the rate, charge, form of contract or agreement, rule, regulation or practice had become effective.

2. If any such hearing cannot be concluded within the period of suspension, as above stated, the commission may, in its discretion, extend the time of suspension for a further period not exceeding six months. At any hearing involving a rate sought to be increased, the burden of proof to show that the increased rate or proposed increased rate is just and reasonable shall be upon the gas corporation, electrical corporation, water corporation or sewer corporation, and the commission shall give to the hearing and decision of such questions preference over all other questions pending before it and decide the same as speedily as possible. (As amended Laws 1967, p. 578, § 1.) (Emphasis added.)

As emphasized in § 393.150, which details the procedure for handling the "file" method, it is quite obvious that the word "complaint" is also found therein. It would not be too unreasonable, therefore, to conclude that much of the confusion is caused by the use of the word both in its normal meaning as a mere "objection" and also as a word descriptive of a specific "procedure" throughout the statutory scheme.

Section 393.270(3): The price fixed by the commission under sections 393.110 to 393.285 shall be the maximum price to be charged by such corporation or person for gas, electricity or water for the service to be furnished within the territory and for a period to be fixed by the commission in the order, not exceeding three years, except in the case of a sliding scale, and *thereafter until the commission shall, upon its own motion or upon the complaint* of any corporation or person interested, fix a higher or lower maximum price of gas, electricity, water or sewer service to be thereafter charged. (Emphasis added.)

The last quoted section is that upon which the trial court apparently concluded that rate increases must be sought under the "complaint" method instead of under the "file and suspend" method found, generally, in § 393.140. The basic statutes concerning "complaints" are:

Section 386.390: 1. Complaint may be made by the commission of its own motion, or by any corporation or person, chamber of commerce, board of trade, or any civic, commercial, mercantile, traffic, agricultural or manufacturing association or organization, or any body politic or municipal corporation, by petition or complaint in writing, setting forth any act or thing done or omitted to be done by any corporation, person or public utility, including any rule, regulation or charge heretofore established or fixed by or for any corporation, person or public utility, in violation, or claimed to be in violation, of any provision of law, or of any rule or order or decision of the commission; *provided, that no complaint shall be entertained by the commission, except upon its own motion, as to the reasonableness of any rates or charges of any gas, electrical, water, sewer, or telephone corporation, unless the same be signed by the mayor or the president or chairman of the board of aldermen or a majority of the council, commission or other legislative body of any city, town, village or county, within which the alleged violation occurred, or not less than twenty-five consumers or purchasers, or prospective consumers or purchasers, of such gas, electricity, water, sewer or telephone service.*

2. All matters upon which complaint may be founded may be joined in one hearing, and no motion shall be entertained against a complaint for misjoinder of causes of action or grievances or misjoinder or nonjoinder of parties; and in any review by the courts of orders or decisions of the commission the same rule shall apply with regard to the joinder of causes and parties as herein provided.

3. The commission shall not be required to dismiss any complaint because of the absence of direct damage to the complainant. Upon the filing of a complaint, the commission shall cause a copy thereof to be served upon the corporation or person complained of.

4. Service in all hearings, investigations and proceedings pending before the commission may be made upon any person upon whom summons may be served in accordance with the provisions of the code of civil procedure of this state, and may be made personally or by mailing in a sealed envelope with postage prepaid.

5. The commission shall fix the time when and the place where a hearing will be had upon the complaint and shall serve notice thereof, not less than ten days before the time set for such hearing, unless the commission shall find that the public necessity requires that such hearing be held at an earlier date. (As amended Laws 1967, p. 578, § 1.) (Emphasis added.)

Section 393.260(1) contains language similar to that found in § 386.390(1), to-wit:

Upon the complaint in writing of the mayor or the president or chairman of the board of aldermen, or a majority of the council, commission or other legislative body of any city, town, village or county within which the alleged violation occurred, or by not less than twenty-five consumers or purchasers, or prospective consumers or purchasers of such gas, electricity, water or sewer, as to the illuminating power, purity, pressure or price of gas, the efficiency of the electric incandescent lamp supply, the voltage of the current supplied for light, heat or power, or price of electricity sold and delivered in such municipality, or the purity, pressure or price of water or the adequacy, sanitation or price of sewer service, the commission shall investigate as to the cause of such complaint.

Section 393.270(1) requires that the Commission "shall cause notice of such complaint, and the purpose thereof, to be served upon the person or corporation affected thereby", which is similar to the provision found in § 386.390(3), supra.

Many of the arguments made revolve around the effect of § 386.400, which provides:

Any corporation, person or *public utility* shall have the right to complain on any of the grounds upon which complaints are allowed to be filed by other parties, and the same procedure shall be adopted and followed as in other cases, except that the complaint may be heard ex parte by the commission or may be served upon any parties designated by the commission. (Emphasis added.)

Prior to detailing the manner in which the parties construe the effect of § 386.400 upon § 386.390, we make this observation as to the crucial issue, for some hoped-for simplicity of reading. Section 386.390, heretofore quoted, prior to the *exception* therein allows for complaints to be filed against utility companies. The exception therein pertains specifically to *rates* and limits those who may complain to governmental bodies through the "mayor," "president or chairman of the board of aldermen," a "majority of the council, commission or other legislative body" of any city, town, village or county or "twenty-five consumers." With no effort toward over-simplification, the question may be posed—did § 386.400 place a public utility only within those listed generally in § 386.390 that might complain or were they also added to those allowed to complain as to "rates" in the "exception," i. e., public governmental units and consumers (25 or more)?

The brief of other utilities and the Company, attacking the judgment entered, are similar; and, because of the many cross-references to statutes therein, we quote the following therefrom:

> Subsection 3 of the same statute [§ 393.-260] provides that the Commission shall prescribe the form and contents of the complaints, and requires that same "shall be signed by the officers, or by the customers, purchasers or subscribers making them, who must add to their signatures their places of residence, by street and number, if any."
>
> Both Sections 386.390(3), set forth supra, and 393.270(1) require the Commission to serve notice of a complaint upon the person or corporation complained of or affected thereby. Similar language is likewise contained in Section 386.420(1), relating to how hearings are to be conducted before the Commission. Had the Legislature intended that gas, electric, water and sewer utilities file complaints with the Commission to initiate rate cases, there clearly would be no need for such corporation to serve itself with notice thereof. A statute should not be given a construction which would cause such an absurd result. *State ex rel. Dravo Corporation v. Spradling,* 515 S.W.2d 512 (Mo. 1974).

The conclusion of the lower court that Section 393.270(3) provides the exclusive means (i. e., a complaint or upon the Commission's own motion) for utilities to initiate rate increase proceedings ignores the fact that Sections 386.390 and 393.260 make absolutely no mention of the Commission's entertaining a complaint by a public utility as to the reasonableness of its own rates; thus, expressio unius est exclusio alterius. *Giloti v. Hamm-Singer Corporation,* 396 S.W.2d 711 (Mo.1965). Section 386.400 purports to give utilities generally "the right to complain on any of the grounds upon which complaints are allowed to be filed by other parties", but this does not include the right of a utility to file a complaint against its own rates,

because Sections 386.390 and 393.260 specifically enumerate the parties qualified to file a complaint as to the reasonableness of a utility's rates and charges, and utilities are not among them. It is obvious from a reading of Sections 386.390 and 393.260 that they speak in terms of particulars while Section 386.400 is couched in general language. Where general terms or expressions in one part of a statute are inconsistent with more specific provisions in another part thereof, the specific provisions must govern. *Terminal Railroad Association of St. Louis v. City of Brentwood* [360 Mo. 777], 230 S.W.2d 768 (Mo.1950).

Section 386.400 was thus only intended to give public utilities the right to file complaints on matters other than as to the reasonableness of their rates. This is the only manner in which these two separate statutes dealing with the same subject matter can be harmonized and force given to the provisions of each. *State ex rel. Chicago, Rock Island and Pacific Railroad Company v. Public Service Commission,* 441 S.W.2d 742 (Mo.App.1969).

\* \* \* \* \* \*

Missouri statutes are barren of any procedural guidance for the Commission should it ever entertain a "complaint" by a utility as to its own rates if filed under Section 393.270(3).

In contrast, the Consumers argue that although there is, in fact, a file and suspend method of raising rates, it was not available under the factual setting involved herein. They contend that ". . . there are two statutory ways to increase electric rates in Missouri but such methods are not optional with the utility or the Public Service Commission"; and, the statutes cover separate situations, i. e.,

1. Where there is a statute or order of the Commission fixing maximum rates—by order of the Commission, after hearing, on its own motion or upon complaint. Section 393.270(3).

2. Where there is no statute or order of the Commission fixing maximum rates—by the filing of tariff schedules, which may or may not be suspended. Sections 393.140(11) and 393.150.

Recognition is then given to *May Department Stores Co. v. Union Electric Co.,* 341 Mo. 299, 107 S.W.2d 41 (1937), wherein the court said: "The [Commission] has exclusive jurisdiction to establish public utility rates and may do so either by approval of rate schedules filed with it or by order after investigation or hearing." Consumers construe that statement to mean approval of alternative methods, although it is not clear if the "hearing" referred to was in reference to one possibly held in connection with the new rate filing or was a reference to a hearing under the complaint method. In other words, it is the position of Consumers that the "file" method can also be used by utilities whose rates had been set previously by the "file" method, but not in those instances where the Commission had had an earlier hearing in which it fixed the rate by Order. That is apparently the position adopted by New York, under statutes similar in relevant aspects to those in Missouri in *In Re Dry Dock, East Broadway & Battery R. Co.,* 254 N.Y. 305, 172 N.E. 516 (1930). See also *City of New York v. Brooklyn Edison Co., Inc.,* 189 N.Y.S. 312 (Sup.Ct.1921). Nothing could be gained by further exploring the question through foreign precedents because the experience in Missouri now covers over sixty years and the "file" method has been accepted and consistently used throughout that time—absent the precise attack now made.

Somewhat in conclusion, we make our own observation. Section 393.270(3), by its terms, applies to a "price fixed by the commission under sections 393.110 to 393.285." A price fixed by the file and suspend method—§ 393.140—falls within the classification noted. This court has so held. In *State ex rel. St. Louis County Gas Co. v. Public Service Commission,* 315 Mo. 312, 317, 286 S.W. 84, 86 (1926), it was said: "A

schedule of rates and charges filed and published in accordance with the foregoing provisions [now § 393.140(11), the file and suspend statute] acquires the force and effect of law." In *May Department Stores Co. v. Union Electric Co.,* supra, this court held: "These provisions mean that a public utility may by filing schedules suggest to the commission rates and classifications which it believes are just and reasonable, and, if the commission accepts them, they are authorized rates, but the commission alone can determine that question and make them a lawful charge." In 64 Am.Jur.2d, Public Utilities, § 244, the general statement is made that: "Public utility rates filed pursuant to statute with a public service commission, or promulgated by order of the commission in accordance with the statute, have the same force and effect as if directly prescribed by the legislature." Of significance is the fact a "hearing" is proper under the file and suspend method as provided in § 393.150. See also: *Marty v. Kansas City Light & Power Co.,* 303 Mo. 233, 259 S.W. 793 (1924); and, *State ex rel. Hotel Continental v. Burton,* 334 S.W.2d 75 (Mo. 1960).

■■ From all of the arguments made, it is apparent that this court through the years has not read § 393.270(3), and its related sections, literally. It has recognized that all of the statutes reference rates and charges must be read and interpreted with reference to the others. To do otherwise would produce a conflict between the statutes noted. When read together there is ambiguity, and we look to the construction which those assigned by law to administer those provisions have placed on them. *Foremost-McKesson, Inc. v. Davis,* 488 S.W.2d 193 (Mo. banc 1972). All parties and the trial court have recognized that the Commission, since its establishment many years ago, has accepted the "file and suspend" method as proper for proposed rate changes. In addition, the General Assembly (of which the Commission is an arm) as recently as 1967 amended these very stat-

utes creating the present controversy. That those of immediate concern remained essentially the same is indicative of the fact that they are being interpreted by the Commission as intended by the General Assembly. In light of the fact that such approval has now extended over sixty years, and any contrary finding necessarily would be premised on the obviously ambiguous statutory provisions noted, a court should refrain from substituting a new and novel interpretation thereof. Either procedure authorizes and, in fact, contemplates that the Commission will protect not only the rights of the consuming public but also the financial integrity of the utilities—by public hearings, where proper.

■ The trial court erred when it reversed the Report and Order in No. 18,180 for failure of the Commission to proceed under § 393.270.

Prior to giving consideration to the remaining three points (Nos. 1, 2, 3) in the joint motion of the Consumers, we do mention that the trial court ruled on each in a "Memorandum Opinion & Journal Entry" which was incorporated by reference in the "Judgment Entry" heretofore set out.

Point 1: The Consumers contend that the Commission, once having declared a two-year moratorium on further rate increases as authorized by § 393.270(3), cannot change or abrogate that order.

The parties have not called to our attention, nor have we found, any case in Missouri where the question was considered. The reason perhaps is obvious, because it has been suggested that this case constitutes the first time the Commission has made such an order of repose. In any event, we find no statute specifically resolving the issue. Section 393.230(4) states that the Commission ". . . may examine into all matters which may change, modify or affect any finding of fact previously made . . ." but that section, generally, applies to "revaluations" of property. Section 386.500 contemplates changes but only in rehearing proceedings. Section 386.490(3),

arguably, could authorize such a change in that it provides:

> Every order or decision of the commission shall of its own force take effect and become operative thirty days after the service thereof, except as otherwise provided, and shall continue in force either for a period which may be designated therein or *until changed or abrogated by the commission,* unless such order be unauthorized by this law or any other law or be in violation of a provision of the constitution of the state or of the United States.

Outstate cases cited are not too persuasive or controlling. *Trustees of Saratoga Springs v. Saratoga Gas, Electric, Light & Power Co.,* 191 N.Y. 123, 83 N.E. 693 (1908); *Brooklyn Union Gas Co. v. Prendergast,* 7 F.2d 628 (E.D.N.Y.1925); *Permian Basin Area Rate Cases,* 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968); *In Re Other Southwest Area Rate Case, Shell Oil Company et al. v. Federal Power Commission,* 484 F.2d 469 (5th Cir. 1973); and *Illinois Bell Tel. Co. v. Illinois Commerce Commission,* 414 Ill. 275, 111 N.E.2d 329 (1953). One statement in the last case is of interest: "[5, 6] The construction contended for seems to be in conflict with the spirit of the act. One of its primary purposes was to set up machinery for continuous regulation as changes in conditions require. It appears to be inherent in the act itself." The statute of Illinois is different from that of Missouri, but we think the "spirit of the act" analysis is logical and should be the standard in this state. In fact, this court said in *State ex rel. Chicago, R.I. & P.RR Co. v. Public Service Commission,* 312 S.W.2d 791, 796 (1958): "Its [Commission's] supervision of the public utilities of this state is a continuing one and its orders and directives with regard to any phase of the operation of any utility are always subject to change to meet changing conditions, as the commission, in its discretion, may deem to be in the public interest." To rule otherwise would make § 393.270(3) of questionable constitutionali-

ty as it potentially could prevent alteration of rates confiscatory to the company or unreasonable to the consumers. See, *McGrew v. Missouri Pacific Ry. Co.,* 230 Mo. 496, 132 S.W. 1076 (1910).

■ Since the very purpose of having the Commission is to have an agency with such expertise as to be sensitive to changing conditions, we rule that the trial court was in error in rejecting the Commission's action in that regard.

■ Point 2: It seems agreed that the Commission in this case used a combined "test" and "projected" year upon which to rule. The trial court did not decide this point for the reason it would be so interwoven with the question of "reasonableness" of rates as to be considered when, and if, the statutory review on the merits is made, and we refrain for the same reason.

■ Point 3: Was there compliance with §§ 386.130 and 536.080? The former provides that ". . . [a] majority of the commissioners shall constitute a quorum for the transaction of any business" and the latter calls for all participating in the decision to ". . . personally consider the whole record or such portions thereof as may be cited by the parties . . ." Apparently, in most instances the Commission certifies compliance with both sections, although it is presumed that administrative decisions are made in compliance with applicable statutes. *Dittmeir v. Missouri Real Estate Commission,* 316 S.W.2d 1 (Mo. banc 1958), cert. denied 358 U.S. 941, 79 S.Ct. 347, 3 L.Ed.2d 348.

We outline the relevant facts in this case (and respectfully use only the last names of the Commissioners involved). On the date of the Report and Order, the Commission was comprised of four members: Pierce (Chairman), Fain, Reine and Sprague. Sprague, having assumed office after conclusion of all the hearings, did not participate in the decision. Pierce, Fain and Re-

ine certified compliance with the statutes. Thereafter, the applications for rehearing were filed—between June 27–30, 1975. They were denied on July 8, 1975. On that date Reine was no longer a member, but there were five members: Pierce, Fain, Sprague, Jones and Mulvaney. The record reflects that Pierce, Fain and Sprague participated in the denial order. No "certification" was attached. By letter to an attorney for Consumers, Chairman Pierce stated that a ruling on an application for rehearing was not a "final decision" bringing into play the two statutes. At this time we need not explore the validity of that opinion, but we do emphasize that it is a basic and fundamental rule of law that one making a decision be aware by some means of what he is deciding.

■ Although the burden was on the Consumers, making the challenge, to establish noncompliance by a majority of the Commission, we do not believe it necessary to review further parts of the record to resolve that precise question. However, the facts as to Commissioner Sprague create a possible denial of due process and the actual truth of the matter should be brought forward. To accomplish the same, and hopefully to avoid further delay in this matter, the trial court is directed to modify its "order of remand" to allow Commissioner Sprague ten days to certify to it that he had complied with § 536.080 at the time of denial of the motions for rehearing. Absent such certification, the remand for reconsideration should follow.

Having concluded that the Commission was authorized to entertain a request by the Company for a rate increase under the "file and suspend" method detailed in § 393.140(11), we consider arguments of the Consumers (and the Public Counsel) that they were thereby deprived of their property without (1) due process or (2) equal protection, contrary to accepted constitutional principles.[2]

---

**2.** Motions to strike portions of Consumers' brief re constitutional questions are overruled.

*Due Process*: The alleged deprivation of due process is bottomed on the fact possible inaction by the Commission, following a new rate filing, could permit the same to become effective absent notice or hearing. Perhaps the two controlling decisions are: *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) and *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Therein may be found the current procedural due process test. It has two phases. The first calls for consideration of whether or not the individual interest in question is a "protected" interest encompassed within the scope of "life, liberty or property" under the Fourteenth Amendment. If no such interest is found, the test stops there. If resolved otherwise, the second phase calls for balancing the competing interests of the state and the individual. See *Morrissey v. Brewer,* 408 U.S. 471, 483, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

█ In this case, we are of the opinion the first phase of the test is decisive. Consumers' contention of necessity is premised on the argument that they have a protected "property" interest in the *present level* of utility rates. We have not been cited any authority for that proposition. On the other hand, there are a number of cases to the contrary.

In *Sellers v. Iowa Power and Light Company,* 372 F.Supp. 1169 (S.D.Iowa 1974, with three judges participating), plaintiffs challenged the constitutionality of a temporary utility rate increase without a hearing with a due process argument. The court said, l. c. 1172:

> "Plaintiffs describe the property they claim was taken from them without procedural due process as the money required to pay the rate increases prior to the determination of their legality, thus depriving them of the use and enjoyment of the fruits of their labors or statutory grants which, but for the increases, would have been available to pay other household expenses.

We believe plaintiffs' claim of property interest is too broadly stated to be within the protection of the Fourteenth Amendment. In our opinion plaintiffs must show they have a legal entitlement to or a vested right in the rates being charged before the proposed increase, before they can claim any property rights protected by the United States Constitution.

At common law a public utility 'like the seller of an unregulated commodity, has the right in the first instance to change its rates as it will, unless it has undertaken by contract not to do so'. *United Gas Co. v. Memphis Gas Division* (1958), 358 U.S. 103, 113, 79 S.Ct. 194, 200, 3 L.Ed.2d 153; *FPC v. Hunt* (1964), 376 U.S. 515, 522, 84 S.Ct. 861, 11 L.Ed.2d 878; *United Gas Pipe Line Co. v. Mobile Gas Service Corp.* (1956), 350 U.S. 332, 343, 76 S.Ct. 373, 100 L.Ed. 373; *Gas Service Co. v. FPC* (1960), 108 U.S.App. D.C. 334, 282 F.2d 496, 500.

Conversely, utility customers have no vested rights in any fixed utility rates, *Wright v. Central Kentucky Natural Gas Co.* (1936), 297 U.S. 537, 542, 56 S.Ct. 578, 80 L.Ed. 850; *Norwegian Nitrogen Products Co. v. United States* (1933), 288 U.S. 294, 318, 53 S.Ct. 350, 77 L.Ed. 796; *San Antonio Utilities League v. Southwestern Bell Telephone Co.* (5th Cir., 1936), 86 F.2d 584, cert. den., 301 U.S. 682, 57 S.Ct. 783, 81 L.Ed. 1340; *United States Light and Heat Corp. v. Niagara Falls Gas & Electric Light Co.* (2nd Cir., 1931), 47 F.2d 567, 570, cert. den., 283 U.S. 864, 51 S.Ct. 656, 75 L.Ed. 1469; *Lenihan v. Tri-State Telephone & Telegraph Co.* (1940), 208 Minn. 172, 293 N.W. 601, cert. den., 311 U.S. 711, 61 S.Ct. 392, 85 L.Ed. 463; *Wisconsin Telephone Co. v. Public Service Commission* (1939), 232 Wis. 274, 287 N.W. 122, cert. den., 309 U.S. 657, 60 S.Ct. 514, 84 L.Ed. 1006.

As plaintiffs have no property interest in existing rates which is protected by the Fifth and Fourteenth Amendments, we hold that plaintiffs are not entitled to a

procedural due process hearing prior to a determination of the lawfulness of the proposed rate increase and that the Iowa statutory provision in 490A.6 which provide for interim collection of the proposed increase under bond to be refunded if found to be excessive does not violate the Due Process Clauses of the Fifth and Fourteenth Amendments."

The rationale of most of the cases is consistent with the following statement from *Ten-Ten Lincoln Place, Inc. v. Consolidated Edison Co.,* 190 Misc. 174, 73 N.Y.S.2d 2 (1947), to-wit: "Nor has plaintiff any vested right to utility service or to any particular rate *except to the extent that the public service law grants him such right*; and he is not entitled to invoke his constitutional guarantees of 'due process' or 'equal protection' under such circumstances." (Emphasis added.) We find no provision in the statutory scheme for Missouri granting consumers such a right. Other cases consistent with our conclusion are: *United States Light & Heating Corporation v. Niagara Falls Gas & Electric Co.,* 47 F.2d 567 (2nd Cir. 1931); *City of Birmingham v. Southern Bell Telephone & Telegraph Co.,* 234 Ala. 526, 176 So. 301 (1937); *Smith v. Southern Bell Telephone & Telegraph Co.,* 268 Ky. 421, 104 S.W.2d 961 (Ky.1937); *State ex rel. Evansville Coachlines, Inc. v. Rawlings,* 229 Ind. 552, 99 N.E.2d 597 (1951); and *New Haven v. New Haven Water Co.,* 132 Conn. 496, 45 A.2d 831 (1946). In support of their position, Consumers cite such cases as *Allen v. Coffel,* 488 S.W.2d 671 (Mo.App.1972); *Office of Communication of United Church of Christ v. F.C.C.,* 123 U.S.App.D.C. 328, 359 F.2d 994 (1966); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Templeton v. A.T. & S.F. Ry. Co.,* 84 F.Supp. 162 (W.D.Mo. 1949), aff'd 181 F.2d 527 (8th Cir. 1950); *State ex rel. Gentry v. Curtis,* 319 Mo. 316, 4 S.W.2d 467 (Mo. banc 1928); and *Scott v. City of Indian Wells,* 6 Cal.3d 541, 492 P.2d 1137 (Cal. banc 1972). They do deal with

"property rights" but they can not be called persuasive in the area of rate-making.

*Equal Protection* : It is well settled that a state may classify persons and objects for purposes of legislation, with restraints recently repeated by this court in *Howe v. City of St. Louis,* 512 S.W.2d 127 (banc 1974), l. c. 132, to-wit:

"The rules for judicial review of a legislative classification which is challenged as a denial of equal protection are well settled. The equal protection clause does not forbid a State to create classes in the adoption of regulations under its police power, but it allows wide discretion, precluding only that done without any reasonable basis and therefore arbitrary, or as otherwise stated, it forbids invidious discrimination. *Morey v. Doud,* 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957); *Kansas City v. Webb,* 484 S.W.2d 817 (Mo.). Discrimination is arbitrary and unconstitutional if the classification rests upon a ground wholly irrelevant to the achievement of the legislative objective. *Gem Stores, Inc. v. O'Brien,* 374 S.W.2d 109 (Mo. banc 1963). 'Classification of the subjects of legislation is not prohibited by the equal protection of the law clauses of the United States and State Constitutions "if all within the same class are included and treated alike." ' *Kansas City v. Webb,* supra; *Burns v. Swenson,* 430 F.2d 771 (8th Cir. 1970)."

▮▮▮▮ There is a substantial difference between a utility and one of its consumers. Only the former would be in a position to suggest the need for new rates (§ 393.-140(11)), by virtue of its singular knowledge as to changing financial conditions and its own present financial status. A consumer, on the other hand, even absent such knowledge is given a legal right to complain (§ 386.390 and § 393.260) of the new rate. The statutory scheme authorizes the Commission to call for "notice" and "hearing" but does permit approval absent either in certain instances. In that event, the consumer can initiate a complaint to review the validity of a new rate—which results in the

same being "temporary" at best. Since the common law prior to the enactment of the Public Service Commission Act in 1913 allowed utilities an absolute right to raise or lower the price of their services without notice and without any kind of regulatory approval, the Act as now written constitutes a fair legislative compromise for both the utility and consumers. Even if the obligation of the Commission to balance "fairness" to the consumers and the utilities be ignored, it is of interest that the General Assembly has created a further protective feature, i. e., enactment of Section 4(6) of the Reorganization Act of 1974 calling for the office of Public Counsel "relating to representation of the public before the public service commission." Page 537, Laws of Missouri, 1973–74. We are of the opinion that the two statutory approaches in question have a rationale basis and do not deny equal protection.

Lastly, the judgment entry quashing the writ of review should be vacated in view of our ruling on Point 4 to avoid further expense and time. If Commissioner Sprague files the certification heretofore called for, the trial court should proceed with the statutory review on the merits; if the certification is not filed and the Commission must reconsider the motions for rehearing, the present record before the trial court can be supplemented and review on the merits can be concluded.

The judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

HOLMAN, HENLEY, FINCH and DONNELLY, JJ., concur.

BARDGETT, J., concurs in result in separate opinion filed.

SEILER, C. J., dissents.

BARDGETT, Judge (concurring in result).

I concur in the result reached by the principal opinion in this case but do so because in this case there was, in fact, knowledge on the part of the parties interested in contesting the proposed increased rates and there was a full hearing conducted with reference to those proposals. I do not agree that municipalities and consumers have no procedural due process rights with reference to utility rates. While a consumer may not have a property right to the continuation of a specific rate, he does have a right not to be charged unreasonable rates. Whether or not a proposed rate is reasonable is a matter for the Public Service Commission to decide, but, those who will have to pay the increase are, in my opinion, entitled to receive notice of the proposal and be afforded an opportunity to appear and be heard by the commission prior to the rates going into effect.

SEILER, Chief Justice (dissenting).

After consideration of the motions for rehearing and the briefs, I have concluded to withdraw my original vote of dubitante and to file this dissent.

As I understand the principal opinion, it holds that the "file and suspend" method is proper for proposed rate changes by a utility, even where the commission has previously fixed reasonable rates, basing this largely on the conclusion that this method has been used for over sixty years without objection from the general assembly.[1] However, as I understand the motion for rehearing, there seems considerable doubt whether the commission itself has accepted the "file and suspend" method as a proper method to seek a rate increase where the maximum rate had been fixed by statute or

1. There is nothing to indicate prior general assemblies were ever made aware that the "file" method could be used by a utility to raise previously established rates without notice or hearing, or that such an intent was being ascribed to the legislature. The present case seems to be the first time the issue has been squarely presented to a Missouri court, so this is not a situation where the legislature has been put on notice by virtue of prior judicial declarations so holding.

order of the commission. Respondent does not clearly assert to the contrary in its response. Relators cite the commission's decision in *Atchison, Topeka & Santa Fe Ry. Co.,* 3 Mo. PSC 75, 85 (1916) where the commission stated that ". . . a schedule or tariff can only be filed with this Commission as an exhibit as proposed rates not to be effective as lawful schedules or tariffs until after a hearing had and order has been issued by this Commission as provided in the Public Service Commission Law." According to *Marty v. Kansas City Light and Power Co.,* 303 Mo. 233, 259 S.W. 793 (1924), the utility in case No. 1615, 8 P.S.C. R. Mo. 293, used the complaint method to obtain an increase in rates. The briefs on rehearing point out other instances where utilities have proceeded by filing applications for permission to put increased rates into effect, some as recent as 1968 and 1969. The rules of the commission provide for the filing of applications for authority to change rates. It would appear, therefore, that there is considerable support for the proposition that the "file" method has been used where the commission has not previously fixed rates and the "complaint" or application method has been used where it has previously fixed rates. If this is true, then it would appear that much of the historical underpinning on which the principal opinion relies is removed and that the position adopted by the New York court in construing statutes similar in relevant aspects to ours, *In re Dry Dock, East Broadway & Battery R. Co.,* 254 N.Y. 305, 172 N.E. 516, 518 (1930) warrants serious consideration.[2] In the New York Public Service Commission law, Sec. 29 corresponded to our "file" method, while Sec. 49 corresponded to our "complaint" method. The court of appeals of New York said as follows:

". . . By section 49 of the law, machinery was created by which rates, which previously could be changed only by the action of the Legislature, might thereafter be changed by order of the commission as superintending agency of the state. To that agency the Legislature delegated the function of exercising the regulatory powers of the state systematically and in accordance with prescribed rules, and imposed the duty upon it of changing rates fixed by law when these rates are shown to be unjust and unreasonable. By section 29 the Legislature restricted the power of the carrier to fix its own rates in the field where previously the state had not chosen to exercise its regulatory power. Provision was made in that section intended to afford the agency of the state opportunity to interdict any change before it became effective if it appeared that the new rate was unreasonable. The two sections are intended to cover separate fields. In the field where change in rates can lawfully be effected only by affirmative action of the state, section 49 makes provisions for such action by its agency. In the field where change in rates may lawfully be effected unless the state interposes its veto, section 29 provides opportunity, before the change becomes effective, for determination whether such a veto would be reasonable. No other construction of the statute accords with either the letter or the spirit of the statute."

Therefore, I believe the trial court was correct in the case before us when it declared: "The proceedings which resulted in the report and order under scrutiny were initiated by the filing by MPS of revised rate schedules. The exclusive procedures under Sec. 393.270, V.A.M.S. are respondent's own motion or complaint of any interested party. It follows that the proceedings and resulting report and order were and are a nullity . . ."

On the due process issues which are, in my opinion, directly involved in any rate increase case, I agree with Judge Bard-

---

**2.** It is of interest and relevance that the Missouri Public Service Commission Act was based upon the 1907 New York Act.

Annual Report, Mo.P.S.C., Fiscal year 1971–72, p. 4.

gett's statement in his opinion concurring in result that a consumer does have the right not to be charged unreasonable rates and that those who will have to pay the increase are entitled to receive notice of the proposal and be afforded an opportunity to appear and be heard by the commission prior to the rates going into effect.

Under the "file" method of Sec. 393.-140(11), all the utility need do is to file the increased tariff and give thirty days notice to the commission. The commission may, but is not required to, order publication for thirty days. The utility does not contend the commission is required to give notice and, in fact, both the utility and the commission take the position that the "file" method of rate increase is valid without any requirement of notice or hearing. As I understand the facts in the case before us, there actually was no such order of notice made by the commission and the only public notice of the filing was whatever came about by reason of a newspaper story on the subject and whatever voluntary notice was given the parties concerned. This, of course, would not constitute a due process notice. Volunteered notice or notice by grace is not sufficient due process, *Mullane v. Central Hanover Bank Tr. Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Harris v. Bates,* 364 Mo. 1023, 270 S.W.2d 763 (1954); *Hess v. Pawloski,* 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927); *Wuchter v. Pizzutti,* 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928).

Under the principal opinion the commission when a tariff or increase of rates is filed might (as it legally could) do nothing and thirty days later the customers would be paying higher rates without knowing what happened to them. In fact, if the commission so decided for "good cause", the increased rates could go into effect almost immediately, as the statute allows the commission under those circumstances to forego the thirty days notice. All this could be done without the utility making any actual showing whatever that its present rates were unreasonable, because the statute does not require the filing of anything more than whatever is contained in the tariff sheet and the tariff sheet is nothing more or less than a price list.

The principal opinion rejects the due process argument advanced by relators on the basis that there is no protected property interest in the present level of utility rates. It seems to me, however, that what the consumers are contending here is not that they have the property right in a specific fixed utility rate, but that they have a right to receive notice of any proposed rate increase and to be afforded an opportunity to be heard prior to an increase going into effect. They do not claim a right to a specific rate but they do claim the right to just and reasonable utility rates, which is what is required by the statute. Sec. 393.-130–1 requires that all charges made by a public utility "shall be just and reasonable." Sec. 393.130–3 requires that the utility serve all alike and a consumer, therefore, cannot be denied service at the will of the utility. Sec. 393.280 provides that if the company charges more than the price fixed by the commission, no recovery can be had in an action to collect for the electrical service and the making of the excessive charges is a complete defense to the action. These statutory provisions establish a right of entitlement in the consumer to a "just and reasonable" rate, charge or price. It is part of the "spirit of the act" standard referred to in the principal opinion. In *Ohio Bell Telephone Company v. Public Utilities Commission of Ohio,* 301 U.S. 292, 304–5, 57 S.Ct. 724, 730, 81 L.Ed. 1093 (1937), the court talked about a fundamental right of due process in all persons affected by the actions of a utility regulatory commission as follows:

"  .   .   .

"All the more insistent is the need, when power has been bestowed so freely [referring to the broad powers with which a public service commission has invested], that the 'inexorable safeguard' .   .   . of a fair and open hearing be

maintained in its integrity . . . The right to such a hearing is one of the 'rudiments of fair play' . . . assured to every litigant by the Fourteenth Amendment as a minimal requirement . . ."

If more is needed, we can properly look to the substantial investment which electric utility consumers have in their electrical appliances and systems. As pointed out in the briefs, the utility has invested approximately $1,945 worth of capital for each of its 110,000 customers and now has $1,709 worth of facilities (original cost) for each of these customers. A customer who has invested in the cost of the electrical system in his residence or business and then further invested in the cost of various electrical appliances (e. g., refrigerator, lighting fixtures, television set, range and oven, washer and dryer, radio, dishwasher, freezer, vacuum sweeper, sewing machine, furnace, air conditioner, and dehumidifier) has much more at stake on an individual and collective basis than does the company. It is common knowledge the electric companies advertise and promote such investments. The property rights of the customers in terms of their investment are many times greater than those of the utility. Who of us these days has any real choice in deciding whether or not to use electricity in his home or business? It is not realistic to say that electric consumers do not have a direct property interest in, and right to, just and reasonable electric rates. Both the Missouri statutes and their property investment give consumers sufficient entitlement to bring them under Fourteenth Amendment protection.

The principal opinion relies to some extent upon *Sellers v. Iowa Power & Light Company,* 372 F.Supp. 1169 (S.D.Iowa 1974), but in Iowa the statute extended to the consumer in lieu of a procedural due process safeguard, a comparable safeguard guaranteeing his right to a just and reasonable rate in the form of a right to a refund for any payments for utility services in excess of the rate finally approved by the commission. The Iowa statutes provide both for a refund bond and a hearing before rates can be charged which are not subject to refund. There is no such protection in Missouri. The Missouri commission has no power to promulgate an order requiring a pecuniary reparation or refund, *Straube v. Bowling Green Gas Company,* 360 Mo. 132, 227 S.W.2d 666, 668 (1950) and once the utility collects in accordance with rate schedules, the amount so collected cannot be taken away, *Lightfoot v. City of Springfield,* 361 Mo. 659, 236 S.W.2d 348, 354 (1951), nor under the "file" method available henceforth to the utilities is there any guarantee of an opportunity to be heard before the rates are increased.

It is true that consumers in Missouri could file a complaint after the rate had been increased under the "file" method, but then the burden of proof is on the consumer and it is impossible for the average consumer to do anything effective about making such a complaint or investigation. It would take thousands of dollars in fees and expenses for the expert testimony and services of counsel required to carry such a burden.

It seems to me that the result of the principal opinion in holding that there is no need to afford procedural due process to the consumer means that as a practical matter a consumer has no way to insist on his right to "just and reasonable" electrical rates. Under the principal opinion electric rates can be raised without any notice or hearing for consumers, without any evidence of reasonableness whatsoever, and despite the fact that such an increase in rates means that the substantial investment of the individual consumer in his electrical system and appliances is diminished without his having any alternative source of electrical service since the utility has a state protected monopoly.

Even if we were to say the consumer has only a privilege to obtain electricity at the current price, it is a most valuable privilege and "Valuable privileges . . . are also

entitled to the protection of law." *Alpert v. Board of Governors of City Hospital,* 286 App.Div. 542, 145 N.Y.S.2d 534, 538 (1955), where the court held that despite the fact there is no constitutional right to practice medicine in a public hospital, any more than there is an absolute right to sell liquor or drive an automobile, it is a valuable privilege and therefore it was illegal to exclude petitioner, a qualified physician, without notice and an opportunity to be heard.

Additionally, it seems to me that under the law laid down by the principal opinion there is a vast inequality of protection between the rights of the consumer to have rates which are not unreasonably high and the rights of the utility to have rates which are not unreasonably low. As has earlier been stated, under the "file" method the utility need give no notice and if the commission so decides the rates can go into effect immediately. If a consumer makes a complaint, however, he must set forth allegations of fact which if proven will entitle him to relief and there is an express requirement that notice be given the utility, see Sec. 386.390 and Sec. 393.260, and then the consumer must carry the burden of convincing the commission in the course of a long and expensive hearing. In *Kansas City v. Webb,* 484 S.W.2d 817, 825 (Mo. banc 1972), the court was faced with a constitutional challenge to a city ordinance which limited individual condemnees to a trial by jury by six freeholders while providing a corporate condemnee the option of choosing either a common law jury or a jury of six freeholders. In respect to this unequal treatment, the court said as follows:

". . . Granting to a corporate owner of land the right to elect between a trial by common law jury or a freeholders' jury but denying the same right to an individual landowner similarly situated clearly discriminates between the two types of owners without any rational basis for differentiation. It creates an artificial classification bearing no reasonable, just or proper relation to the object of the legislation . ."

So it is, it seems to me, in the present case. There is no rational basis for creating two sets of remedies, one significantly more favorable than the other. This is particularly true in light of the clear expression of legislative intent that there be only one remedy common to all who challenge the validity of the commission's order.

I would affirm the judgment of the trial court and respectfully dissent from the principal opinion.